# EXHIBIT A

| **Summons** | CIVIL DOCKET NO.<br>2384CV00714 E | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

CASE NAME:

MUSTAPHA JAHOUR,                    Plaintiff(s)

vs.

MASS BAY TRANSPORTATION AUTHORITY
And
SATYEN PATEL,                          Defendant(s)

John E. Powers, III,  Acting
                                       Clerk of Courts
Suffolk Superior Civil,  County

COURT NAME & ADDRESS:
Three Pemberton Square
Boston, MA. 02108



RECEIVED APR 12 2023

THIS SUMMONS IS DIRECTED TO *MASS BAY TRANS AUTH* (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the *Suffolk cty. Superior* Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

*Civil clerk's office 3 Pemberton Square, Boston, MA 02108*

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, *Suffolk Superior* Court *3 Pemberton Square, Boston, MA 02108* (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address: *Alfred Wolsky, c/o 9 Woburn Parkway, Woburn, MA 01801*

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

**3. (cont.)** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure**. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. <u>Heidi E. Brieger</u> , Chief Justice on _____ , 20____ . (Seal)

Acting Clerk _____

> **Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

Dated: _____        Signature: _____

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date: _____

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| | | COUNTY _Suffolk_ |

| Plaintiff | MUSTAPHA JAHOUR | Defendant: | MASS BAY TRANSPORTATION AUTHORITY |
|---|---|---|---|
| ADDRESS: | | ADDRESS: | 10 PARK PLAZA, BOSTON, MA |
| | BOSTON, MA | Defendant: | SATYEN PATEL |
| | | | BRAINTREE, MA |
| Plaintiff Attorney: | ALFRED WOLSKY | Defendant Attorney: | |
| ADDRESS: | C/o 9 WOBURN PARKWAY, WOBURN, MA 01801 | ADDRESS: | |
| | | | |
| BBO: | 533060 | BBO: | |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| AB1 | *DISCRIMINATION PERS. INJ. MENTAL DISTRES* | (A) | ☒ YES  ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?  ☐ YES  ☒ NO        Is there a class action under Mass. R. Civ. P. 23?  ☐ YES  ☒ NO

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date
1. Total hospital expenses
2. Total doctor expenses
3. Total chiropractic expenses
4. Total physical therapy expenses
5. Total other expenses (describe below)

Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date
C. Documented property damages to date
D. Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe below)

COMPENSATORY , CONSEQUENTIAL DAMAGES OVER MANY YEARS,RESULTING FROM MULTIFARIOUS DISCRIMINATION, JOB AND CAREER INTERFERENCES, INTENTIONAL INFLICTION OF MENTAL DISTRESS PERMANENT PHYSICALINJURY DUE TO FAILURE TO REMEDY TOXIC CONDITIONS IN WORK ENVIRONMENT

*Two Million Dollars*

TOTAL (A-F): $2,000,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

PERMANENT CHRONIC AND IRREVERSIBLE RESPIRATORY DISORDERS AND ILLNESS DUE TO TOXIC CONDITIONS IN WORK-AREA: MOLD, ASBESTOS, DUST, ALLERGENS; KNOWN TO DEFENDANTS AND NOT ABATED FOR MANY YEARS (MORE THAN 10 YEARS)

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X _[signature]_        Date: 3/24/2023

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

_None_

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X _____

Date: 3/24/2023

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss:                                             Superior Court
                                                        Docket Nr. 2384CV00714 E

MUSTAPHA  JAHOUR, Plaintiff

v.

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY,
Defendant,  and

SATYEN PATEL, Defendant

## **VERIFIED COMPLAINT**

A. Jurisdictional Statement:

This civil action is brought pursuant to and in furtherance of charges originally
brought by the Plaintiff at the EEOC. See EEOC DISMISSAL LETTER &
NOTICE OF RIGHTS dated December 28, 2022, attached hereto and marked
**Exhibit 1**; Cf. MGL, c. 151B, secs 1, 4 and 9; Cf. also, MGL, c. 258, generally;
and secs 2 and 10J  in particular.

## A. OVERVIEW OF CLAIMS

1. The Plaintiff, Mustapha "Jay" Jahour, [hereinafter referred to as "Jay" or
   "the Plaintiff"], is an individual of African ancestry, of dark skin, born in
   the Kingdom of Morocco, naturalized to the United States as a Citizen, is a
   practicing Muslim, and resides in Boston, MA. He has been employed by
   the Defendant, MBTA since 1999, and became a full-time employee in
   2006.

1

2.  The Defendant, Massachusetts Bay Transportation Authority, otherwise known as the MBTA or "T" [hereinafter referred to as the "T"], is a corporate subdivision of the Commonwealth of Massachusetts, runs all public transportation service provided to inhabitants of and visitors to the Commonwealth, at all times relevant hereto -and since 2006- was, and currently is Jay's employer, and is so within the meaning of MGL,c. 258, and has its principal office at   10 Park Plaza, Boston, Massachusetts        .

3.  The Defendant, Satyen Patel, [hereinafter referred to as "Patel") is an individual who was  at all applicable times employed by the T as the Director of Asset Management for the T  and Jay's immediate supervisor and boss at the T within the meaning of MGL, c. 258. He resides in Braintree, Massachusetts.

4.  Jay  asserts that for the past several years in particular (since 2016), he has been subjected to an ongoing, overt, detailed and relentless pattern of race/national origin discrimination, religious belief discrimination, age discrimination and retaliatory responses to his complaints, formal and otherwise; made in connection with the foregoing abusive and hostile treatment he has suffered by the T and  Patel, in particular, who so acted during the course of his work-time and occupation at the T as Jay's immediate supervisor and boss.

5.  The foregoing acts also encompass and include a many years' long failure and refusal of the T to remedy harmful and unhealthful environmental conditions at Plaintiff's workplace including the conspicuous presence of mold, dust, asbestos and other toxic allergens in Jay's immediate work environment which have seriously sickened and disabled the Plaintiff and which have resulted in a progressive and by this time irreversible onset of permanent and worsening disease symptoms affecting his ability to

2

breathe, vitiating his energy and reducing his physical ability to perform his job.

6. As a result of his long endurance and suffering both in body and in mind of this multifarious, offensive, outrageous and ongoing pattern of discriminatory behavior, Jay filed divers formal charges of discrimination with the Massachusetts Commission Against Discrimination on October 17, 2018, and Complaints with the T's own -in house- 'Office of Diversity & Civil Rights' (ODCR).

7. Jay therein alleged and hereby asserts that he was systematically and repeatedly refused and/or bypassed for jobs he sought and applied for within the MBTA in favor of non-Black, non-Muslim, and/or younger employees on several occasions; that specific decisions were made against considering him for these positions he applied for because he was of the Muslim faith; and that he was outrageously characterized as. and expressly called a 'terrorist' for that reason by T employees involved in making these decisions, and his inability to be properly considered for other positions within the T was effected particularly -but not solely- by Patel, who systematically, and at every opportunity he had, did refuse to approve any and all of Jay's evaluation forms which thereby rendered him to be, in practical terms, ineligible for promotion or transfer within the company*. (*When HR at the T gets an application for an available position, HR then sends an evaluation form to the applicant's immediate supervisor for approval). Jay was specifically informed of this repeated negative action on Patel's part by one of the Directors of a job position at the T for which he was applying.

8. Additionally, due to Patel's direct, personal intervention, Plaintiff was being intentionally and systematically excluded from important and critical

3

meetings in his department at the T and was barred from receiving important data and information all of which was necessary and essential for him to properly perform his job, and which made his work substantially more difficult to perform. This practice is being carried out against the Plaintiff by Patel's successor even to the present day.

## B.  FACTUAL BACKGROUND

9.  Jay was, in addition to the foregoing psychological, professional and social stresses imposed upon him; progressively becoming more seriously ill due to the hazardous and toxic physical work environment in which he was situated. He was required to take a succession of Family Medical Leaves of absence (FMLA) on his physicians' directions and was diagnosed with mold and asbestos exposure ailments due to the presence of these toxins at his workplace. His initial medical leave was from February 19, 2019- March 10, 2019. He has been required to take additional medical leaves of absence since that time, again on the directions of his physicians, due to the continued and obstinate failure of the T to abate his work environment conditions, and due to the debilitating symptoms he suffered and his now irreversible chronic illness all of which were directly caused by his work environment conditions and by the T's continued failure to abate the same.

10. On February 25, 2019, Dr. Ellen Dutta, MD, who examined the Plaintiff, stated in writing that Plaintiff was suffering from  "severe allergies" and requested 'a reasonable accommodation' -under the ADA- that his work area be made free of mold, dust, and water leaks. Jay had actually complained for years previously about the mold and asbestos in his office and surrounding area, but to no avail.  And the T failed to accommodate this physician's request.

11.  However, it is notable that the T (Patel) did order that the carpet and tiles (mold and/or asbestos) be removed from another employee's (Gerry Bennett's) like-situated office which was directly adjacent to Jay's office, apparently because Mr. Bennett is not of African descent, not Moroccan and not Muslim. Both neighboring offices had the same, exact, toxic environment.

12.  Some two days after his return to work at the conclusion of his initial Family Leave on or about March 12, 2019, and subsequent to the formal complaints he had made against Patel and the T with ODCR (December 21, 2018 and January 2019), Patel and the T subjected Jay to a completely unfounded, bogus, and plainly retaliatory adverse employment action, a "Discipline" in the form of a written 'Warning'. The Plaintiff contested the discipline action and intended to file a Grievance Petition against it, but under pressure at that time was induced and compelled to sign an acknowledgement and  receipt of the Discipline form, although he expressly did so "under protest". It is notable that any such 'Discipline' placed on a T employee's record bars him or her from eligibility for promotion for a period of two years. Consequently, this wholly contrived action, in the event, was  extremely adverse to Jay, both psychologically and job-wise, as it was designed and intended to be; and an outrageous and costly roadblock to Jay's career advancement at the T under the circumstances.

13.  On that same day, March 12, 2019, Jay was interviewed for his alleged behavior set forth in the disciplinary complaint.  He was being accused of refusing to obey a direct order. This event did not occur. At the time this was alleged to have happened, the Plaintiff was teaching and Patel was present at the class. There was no factual basis whatsoever for this disciplinary action: no order given as alleged; no disobedience; and  this

groundless action is consistent with, and constitutes one notable exemplar of the discriminatory and retaliatory conduct of which Jay herein complains.

14. The next day, on March 13, 2019, Jay filed another complaint with ODCR stating that the discipline issued against him was unwarranted and improper, in that it was groundless; and retaliatory because it was actually created in response to the MCAD action which the Plaintiff had filed and the internal complaints he had later filed with ODCR.

15. On March 14, 2019, Jay was issued a formal "Discipline" document.

16. The Plaintiff now asserts, in addition and in considered hindsight, that Patel had contrived the discipline action against him in an effort to protect himself (Patel) and justify -or draw attention from- his own improper behavior when he (Patel) had plainly and seriously violated written company policy and thereby did expose himself to disciplinary action when Patel, in the course of his duties at the T, did accost Jay in public in the presence of his professional peers and loudly accused him to be a "liar" on December 21, 2018.

17. Jay followed up his ODCR complaints with another email to ODCR on March 14, 2019. Attached to this email was a list of the jobs at the T which Jay had unsuccessfully applied for. This listing of the jobs for which the Plaintiff has applied at the T is attached hereto and collectively marked **Exhibit 2.**

18. The Plaintiff asserts and can and will document and prove with respect to all his job applications; that he fully met the requirements for these positions ( 'MERS' (**M**inimum **E**mployment **R**equirements)) and may even

have been overqualified for them**; yet he , except for one instance, was never granted the almost perfunctory threshold consideration of a preliminary interview.

19. **In support of Jay's qualifications and consistent exemplary work throughout his tenure at the T:  he received a Citation for Outstanding Performance in 2016 and commendatory  letters of recommendation from both Patel and Walter Reed, the senior Director of Asset Management and Planning at the T in 2016. In addition, after Jay was transferred from Asset Management to the IT department at the T, he again received a Citation for Outstanding Performance in 2021. In February, 2022 Jay, after performing a major software upgrade, received an email from the CIO (Chief Information Officer (John Glennon)) thanking and complementing him for outstanding and hard work. See an array of such documents attached to this Complaint and collectively marked **Exhibit 3**.

20. Plaintiff asserts that Patel interfered -as stated above- with his ability and efforts to transfer out of the Asset Management department and then, maliciously and dishonestly, with the imposition of the aforesaid retaliatory and groundless 'Discipline', Patel sought to foreclose his ability to seek promotion for at least two years, and thereby drive him to such despair as to give up and quit his career with the T altogether.

21. On March 19, 2019, another physician, Dr. Jin Choi, requested a 'reasonable accommodation': that Plaintiff's work area be free of mold, dust and water leaks; as the continued  presence of  those toxic conditions caused his increasing suffering and disability which the same conditions had caused him to suffer in the first place. The T failed to accommodate this second physician's request.

22. On March 29, 2019, Jay filed a grievance protesting the Discipline placed on his record with his Union, Management Union, and Local 453. On April 10, 2019, the Union filed a formal grievance against the MBTA. However, the grievance was summarily stamped "Denied" by William Boyce, the senior Director of Jay's department.

23. After the ODCR complaints were filed and the grievance as well, Patel continued to deny the Plaintiff access to the critical information he needed in order to do his job.

24. In April 2019, Patel denied Jay funding and permission to attend an annual conference vital to his job carried on by **TRAPEZE Software, Inc.,** which is an operating company of Volaris Group; which is an operating group of Constellation Software that is engaged in the development, installation and customization of intelligent transportation systems. Its product offerings include scheduling, route optimization, staffing asset management, and communication systems. The division is headquartered in Mississauga, Ontario, and has offices across Canada and the United States, with operating subsidiaries across North America, Northern Europe, Australia and the United Kingdom. It was involved with the T in major projects that associated Trapeze employees using Trapeze protocols with  T employees in the T Asset Management department where Jay was employed.

25. The Trapeze yearly users' conference consists of eight role-based tracks packed with over180 software training sessions that enable attendees to learn specific information that applies to the unique challenges they face every day in the Transit industry . Attendees have the opportunity for hands-on learning about the new release version of 'Trapeze Enterprise Asset Management' (**EAM);** the new technology and trends, one-on-one sessions with Trapeze Mentors as well as extensive networking with their

8

peers and fellow transit professionals. It is a critically important event for T personnel in Jay's department to participate in.

26. Despite repeated requests by Jay to hire one additional staff contractor to assist in his mounting workload in April 2019, Patel refused this request. See attached 2019 time record indicating some excess of 400 hours of work (annualized projection) in excess of Jay's regular 40 hours per work week as a salaried employee of the T, marked as **Exhibit 4**. In addition, the Plaintiff was called upon to postpone his 2019 vacation benefits to the following year to accommodate his excessive work-time. But notably, around the same time in April 2019, Patel did hire additional staff contractors to assist Neil McAleney, the white manager who was placed in charge of Phase II of Trapeze in lieu of Jay, who actually held superior qualifications for the job and 16 years additional seniority at the T.

27. Patel, in fact, did allocate funding for hiring new personnel in the department, but no funds or personnel assistance, whatsoever, were permitted or allocated to Jay at any time. Jay asserts that this treatment of him, requiring him to work unreasonable hours and to postpone his vacation not only constituted further evidence of retaliation by Patel, but, as well, additional evidence of selective, disparate treatment based on Jay's race, religion and national origin, and perhaps his age, as well; in direct violation of the express terms and conditions of his employment with the T, and being plainly unlawful (Cf.: MGL, c. 151B).

28. Again, in early August 2019, Jay requested temporary assistance in his work with one temporary staff person and again, Patel denied his request.

29. The Plaintiff's physical health progressively worsened over this time, due
    to all the above recounted circumstances. He was suffering severe and
    increasing chronic congestive and respiratory disorders in addition to well-
    founded symptoms of acute anxiety, overwork and depression. Despite his
    (and his physicians') repeated requests for dust, asbestos and mold removal
    from his office since February 2018, Patel and the T continued to refuse to
    address Jay's concerns as well as completely disregarding his visibly
    deteriorating physical condition.


30. On August 8, 2019, Jay contacted the Federal environmental office, OSHA,
    in Boston, to report concerns he had with the mold and asbestos present in
    his office and surrounding area. OSHA could offer no assistance due to the
    status of the T as a State managed business.

31. The Plaintiff contacted the State Dept. of Health and an official came out to
    conduct an inspection. Jay requested but never received the results of that
    inspection. In addition, Jay asserts that although his request should have
    been kept confidential, word nevertheless got back to Patel and to William
    Boyce that it was he who contacted OSHA and the Massachusetts Dept. of
    Public Health.

    However, the evidence of the mold and asbestos in Jay's office was
    available and known to the T and documented; although no information in
    this regard was provided to Jay, notwithstanding his repeated requests and
    demands therefor. The T had conducted its own investigation and its
    inspection report confirming the presence of mold is hereto attached and
    marked **Exhibit 5.** See also ASBESTOS ABATEMENT PROJECT
    PERMIT attached hereto and marked **Exhibit 6.**   These documents
    confirm the source of Jay's continuous medical issues related to toxin
    exposure at his work place.

10

32. On August 20, 2019, Jay was informed by the President of his Union, Tim Lasker, that the Union chose not to take his grievance case to arbitration. It should be noted as a possible- and highly plausible- explanation of this selected inaction, despite the justification of his grievance, that Patel and Tim Lasker are friends.

33. Subsequent to the Union's refusal to support him on the Grievance arbitration issue, Jay sought to appeal the Union's action and was informed by Tim Lasker that such appeals were not an option. However, the Plaintiff later discovered that Local 453's CBL (Constitution & By-laws) provides for such an appeal and Lasker intentionally misrepresented this fact.

34. On or about this same time, Jay was unexpectedly ordered that he must report to another supervisor in another department (IT) at a different T location, in an email from Patel. Jay, by this time understandably suspicious that his reassignment was being implemented in retaliation for his recent complaints, sent an email back to Patel requesting a job description, job title, an explanation of why he was being moved, and his salary at the 'new' position. No response was made.

35. On September 13, 2019, Jay's physician, Jin Choi, M.D., requested another Family Medical Leave for him; stating that he was suffering from "chronic anxiety and workplace stress associated with hostile work environment and mold, asbestos and environmental allergen exposure". As a 'reasonable accommodation', his physician requested time off due to the exacerbation of his condition.

36. On September 19, 2019, Jay met with a representative from ODCR and filed another complaint for retaliation against the T and Patel.

11

37. Dr. Dutta, on September 24, 2019, also submitted yet another 'reasonable accommodation' request to the T asking again that Jay's work area be made free of mold, dust, water leaks, asbestos and detritus from active nearby construction, that his work area be well-ventilated and carpet-free. The T again denied this reasonable accommodation.

38. It is important to note that the issue of asbestos found in the floor tiles and elsewhere has been remediated not only for Gerry Bennet, as aforesaid, but since then, in other areas of the workspace as well.

39. Because the T continued to fail and refuse to accommodate the Plaintiff's requests and those made by his physicians for any accommodation to address the environmental issues making him sick and affecting his health, his chronic conditions were unnecessarily -and preventably exacerbated.

40. Jay then met with Dr. Robert McCunney, a well-respected specialist in the field of mold exposure. In a letter to the T dated October 21, 2019, Dr. McCunney requested that due to the uncorrected, unabated, hazardous environmental conditions in his workplace; that the T transfer Jay to a different location where no mold was present as a 'reasonable accommodation'. The T failed to accommodate this request as it had consistently done previously.

41. At the end of his leave of absence due to his chronic medical condition, on his return-to-work form dated November 29, 2019, Dr. Dutta wrote that Complainant's work area MUST BE made free from mold, dust, water leaks, asbestos, active construction, well-ventilated and carpet-free.

42. Jay knew that the area he was being transferred to, IT, had dusty conditions and carpet and would continue to exacerbate his now fragile medical condition and thus present a renewed hazard to his health. When Patel had first approached him about being transferred to IT, Jay told Patel that he couldn't work in that space due to the dusty, carpeted work area. He showed Patel his doctor's accommodation letter and Mr. Patel stated to Jay that he didn't care.

43. Prior to his return to work in December 2019, the Plaintiff emailed Kelly Jeannette from the ADA department at the T (part of the HR office) to discuss his concerns about his transfer location and included Dr. Dutta's recent Return to Work, 'reasonable accommodation' demand which included that he be relocated to a carpet-free work area.

44. Despite the -by then- numerous and repeated physician-requests for a' reasonable accommodation': that Plaintiff be put into a carpet-free work location, in December 2019, Jay began his work in the 'new' location at 10 Park Plaza in the IT Department, in a large, dust-filled area with carpeted floor. During his medical leave his illness had seemed to improve, but almost immediately upon returning to work in the dust filled and carpeted work area, Jay's symptoms again returned and were exacerbated.

45. On January 28, 2020, Dr. Paul Hesterberg, M.D., submitted his letter to the T requesting that the Plaintiff work in an area free of mold, dust, water leaks, asbestos, and that he work in an enclosed space that is carpet-free. The reason for the enclosed office space rather than an open area, is that Jay would not be subjected to the various airborne environmental and health concerns. In addition, it would be far less an inconvenience for the T to remove the carpet from a small office than from a huge open area with

13

numerous cubicles, and there were small, enclosed offices available at that time. The MBTA failed and refused to honor Dr. Hesterberg's request.

46. On February 7, 2020, Plaintiff met with the T's ADA manager and again informed her that the accommodations requested by his physicians were not being provided.

47. On February 11, 2020, Dr. Robert McCunney submitted another 'reasonable accommodation request' to the T requesting that Plaintiff work in an enclosed office, carpet-free.

48. Plaintiff was recently, on an apparently temporary basis, moved to an enclosed office. However, the T has, nevertheless, failed to remove the carpet there, thus, and ultimately failing to meet the numerous and repeated 'reasonable accommodation' requests of his physicians and this failure, particularly under the circumstances, constitutes flagrant and unconscionable disability discrimination. True copies of the physicians' requests and demands for Plaintiff's workplace conditions to be abated are attached hereto and together marked as **Exhibit 7**      .

49.   The denial of interviews for jobs continues to this day (See attachment with more recent jobs  was qualified and applied for and was not offered an interview): **Exhibit 8.**

## COUNT 1:  Handicap and Perceived handicap discrimination

50. The Plaintiff restates and realleges all previous paragraphs of this Complaint

14

51. Plaintiff hereby claims damages from Defendant on the basis of Defendants' discrimination against him which he states resulted in Defendants' failure to provide any reasonable accommodation to his physical working environment to such an extent as to cause Plaintiff to suffer permanent and irreparable injury to his health, and has caused him chronic, progressively worsening, and now continual -and often severe- sickness, physical pain and suffering therefrom.

52. Plaintiff asserts that he now suffers from a severe and irreversible medical condition directly caused by the actions and inactions of the Defendants, and a condition which substantially interferes with one or more of Plaintiff's major life functions.

53. Although Plaintiff's physicians, on numerous occasions, had requested reasonable accommodations, the T repeatedly failed and refused to provide those accommodations; and even to the present day, the T still has not provided a carpet-free working environment to the Plaintiff. To remove carpet from his small office is not an undue burden and could easily be provided. The failure and obstinate refusal of the T to provide these accommodations constitutes disability discrimination.

**COUNT 2:  Retaliation:**

54. The Plaintiff restates and realleges all previous paragraphs of this Complaint.

55. The Plaintiff asserts that he was damaged and does claim damages due to being subjected to retaliation in repeated and diverse ways by the Defendants, in that Plaintiff engaged in several protected activities, that the

15

T and Patel were aware of these actions, and that in close time proximity following his engaging in said activities, he was subjected to an adverse employment action and other repeated actions of reprisal as set forth above.

56. In addition, the Plaintiff asserts that because of his engaging in the aforementioned protected activities, as well as filing a complaint with the ODCR on September 19, 2019 and on February 7, 2020 with the T's ADA manager, he was repeatedly and continuously denied reasonable accommodation requests to ameliorate the hazardous conditions in his work environment by way of reprisal, which led to and caused the permanent impairment of his health.

**COUNT 3: Race/national origin discrimination:**

57. The Plaintiff restates and realleges all previous paragraphs of this Complaint

58. Based upon all the foregoing, the Plaintiff claims damages from Defendants for extensive, continuous and intentional, as well as malicious and actionably hateful acts of discrimination committed against him over the course of the many, many years -leading up to the present time- that the Plaintiff devoted his time and made his career working for the T.

**COUNT 4: Intentional Infliction of Mental Distress:**

59. The Plaintiff restates and realleges all previous paragraphs of this Complaint

60. The Defendants' treatment of the Plaintiff over the course of his long career working for the T, and divers specific aforesaid actions taken against

16

him by Patel and other employees of the T in the course of their employment with and for the T as set forth hereinabove, together and singly;  over the course of many years, as well as the remarkable failure and refusal of the T to take any steps to ameliorate and abate the environmental hazards presenting to the Plaintiff in his workplace which made him permanently sick; all this  despite the succession of notices from Plaintiff's physicians and his own complaints and requests for abatement of those conditions; amounted to outrageous and unconscionable conduct beyond any reasonable limits of decency which the T allowed to continue; even in the face of repeated notifications, complaints and grievances filed and advanced by the Plaintiff.

61. These acts on the part of Patel, the T and others were intentional and often specifically willful; plainly intending to cause harm, hardship and misery to the Plaintiff; or they were grossly and unlawfully negligent and dangerously so.

62. These intentional or outrageously negligent acts and actions by the Defendants did, in fact, cause stress, mental anguish, physical harm, serious sickness and permanent injury to the Plaintiff, and the degree of harm to the Plaintiff was severe in the extreme, and completely foreseeable, logically consequential, and often specifically planned and anticipated by the Defendants.

WHEREFORE, the Plaintiff, Jay Jahour, prays:

1. That the court ORDER the Defendant, T,  to forthwith make a reasonable accommodation to Plaintiff's work environment to make it less toxic to him, including but not limited to removal of the carpet from his office and a thorough dusting and reduction of allergenic material therefrom;

2.  That the court Order the Defendant to cease and desist from taking any discriminatory measures to hinder or interfere with Plaintiff's performance of his job and pursuit of his career plans at the T, which from henceforth must not be governed or evaluated by anything other than a lawful, fair, equal, merit- based process;

3.  That the court Order the Defendant to provide the Plaintiff with full access to any and all information, sources of information (including opportunities to attend meetings), all necessary data bases, reasonable assistance and logistical support &c., so as to enable him to perform his professional duties at the T in a proper, efficient, informed fashion;

4.  That the court determine and enter judgment against the Defendant for all damages  incidental and consequential suffered by the Plaintiff and claimed by him hereinabove in Counts 1-3;

5.  That the court determine and award the Plaintiff damages in the amount of at least  Two  Million Dollars pursuant to Count 4 hereinabove;

6.  That the court award the Plaintiff his costs and counsel fees incurred in pursuing this civil action; and

7.  Any further relief the court determines to be meet and just.

CLAIM OF JURY TRIAL:

The Plaintiff does hereby claim his right to a jury trial for all claims so triable in this case.

Dated: March 24 , 2023

Plaintiff Mustapha Jahour, by his attorney,

/S/

Alfred Wolsky, BBO Nr. 533060

c/o 9 Woburn Parkway

18

Woburn, MA 01801

781 325 3293

HorusDen@aol.com

VERIFICATION

I, Mustapha (Jay) Jahour, do hereby give solemn oath that:

1. I am the named Plaintiff in the above-captioned civil Complaint;

2. I carefully read and reviewed the foregoing Complaint and understand that it will be duly filed in the Suffolk County Superior Court in the City of Boston, MA;

3.  That  all the factual allegations set forth in the foregoing Complaint document are true to the best of my knowledge, information, recollection and belief;

4. That the copies of documents attached as Exhibits to the Complaint are true and accurate copies of the same; and

5. That I sign this Complaint under the pains and penalties of perjury, on this 24 day of March, 2023.

/S/

Mustapha Jahour

## Exhibit# 1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

*New York District Office*
*33 Whitehall St, 5th Floor*
*New York, NY 10004*
*(929) 506-5270*
*Website: www.eeoc.gov*

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 12/28/2022

To: Mustapha Jahour
    100 Fulton Street, #3J
    Boston, MA 02109

Charge No: 16C-2020-00278
EEOC Representative and email:     Amon Kinsey
                                   Supervisory Investigator
                                   amon.kinsey@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC is closing this charge because: Charging Party is pursuing claims in another forum.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Timothy Riera
12/28/2022

Timothy Riera
Acting District Director

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS -- 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you receive this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and within the 2- or 3-year EPA period.**

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 16C-2020-00278 to the District Director at Timothy Riera, 33 Whitehall St 5th Floor

New York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

Exhibit# 2

Director of Modernization
Massachusetts Bay Transportation Authority, Massachusetts
Applied on 03/11/2019 10:16 PM Eastern
History
Application Received

Director of Transit Facilities Maintenance
Massachusetts Bay Transportation Authority, Massachusetts
Applied on 01/23/2019 09:37 PM Eastern
History
Application Received

Director of Green Line Transformation
Massachusetts Bay Transportation Authority, Massachusetts
Applied on 01/23/2019 08:23 PM Eastern
History
Application Received

Project Manager - Commuter Rail, Transit & Facilities
Massachusetts Bay Transportation Authority, Massachusetts
Applied on 01/13/2019 08:53 PM Eastern
History
Application Received

Director of Commuter Rail Capital Programs
Massachusetts Bay Transportation Authority, Massachusetts
Applied on 01/13/2019 06:30 PM Eastern
History
Application Received

Superintendent of Cleaning & Maintenance Systems (Previous Applicants Need not Apply)
Massachusetts Bay Transportation Authority, Massachusetts
Applied on 11/10/2018 11:45 PM Eastern
History
Application Received

Superintendent of Cleaning and Maintenance Systems
Massachusetts Bay Transportation Authority, Massachusetts
Applied on 09/09/2016 06:31 PM Eastern
History
Application Received

Supervisor of Building & Station Maintenance
Massachusetts Bay Transportation Authority, Massachusetts
Applied on 07/21/2016 04:49 PM Eastern
History
Application Received
Appt. Scheduled

Superintendent of Power Systems & Equipment (Previous Applicants Need not Re-Apply)
Massachusetts Bay Transportation Authority, Massachusetts
Applied on 07/06/2016 02:58 AM Eastern
History
Application Received

2

**Application Received**

## Supervisor of Maintenance of Way (Previous candidates need not re-apply) (/careers/mbta/applications/submitted/2469442/b6f3a7a7-eead-457e-b68f-748464fcee9c/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 08/29/2019 12:32 AM Eastern

History

**Application Received**

## Supervisor of Signal Maintenance (/careers/mbta/applications/submitted/2481950/106b1a34-6a85-4c35-b834-4a6943a2ecb6/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 08/28/2019 11:12 PM Eastern

History

**Application Received**

## Project Manager - Commuter Rail, Transit & Facilities (/careers/mbta/applications/submitted/2287832/98a7f0c7-e3b7-470b-a2af-5e83683db449/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 08/28/2019 10:59 PM Eastern

History

**Application Received**

## Manager, Facilities Engineering (/careers/mbta/applications/submitted/2549496/4bd268b4-318f-4606-a906-b15ebedba106/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 08/28/2019 10:45 PM Eastern

History

**Application Received**

## Project Manager - Commuter Rail, Transit & Facilities (/careers/mbta/applications/submitted/2287832/29a25d57-0055-4020-a4ec-3b7b57a84f53/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 04/30/2019 11:53 PM Eastern

History

**Application Received**

## Director of Bus Facility Modernization Program (/careers/mbta/applications/submitted/2426735/ec435787-18d2-48d8-924c-aa0c520d2c07/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 04/30/2019 11:21 PM Eastern

History

**Application Received**

← Prev (/careers/mbta/applications/submitted?page=2)        1 (/careers/mbta/applications/submitted?page=1)

2 (/careers/mbta/applications/submitted?page=2)              4 (/careers/mbta/applications/submitted?page=4)

Next → (/careers/mbta/applications/submitted?page=4)

Showing items 21 - 30

**SUBMITTED     INCOMPLETE**                              38 Submitted Applications found

POSITION

     APPLICATION STATUS

        ACTIONS

## ATC Program Manager (/careers/mbta/applications/submitted/2304251/c79f9e85-57c3-49f6-a941-a7e4ef268da3/application)

Massachusetts Bay Transportation Authority, Massachusetts
     Applied on 04/30/2019 10:12 PM Eastern

     History

**Application Received**

## Supervisor of Electrical Maintenance (Previous applicants no need to re-apply) (/careers/mbta/applications/submitted/2358070/5dd872e5-986a-4433-b228-4f666453431d/application)

Massachusetts Bay Transportation Authority, Massachusetts
     Applied on 04/28/2019 11:40 PM Eastern

     History

**Application Received**

## Director of Modernization (/careers/mbta/applications/submitted/2356598/cb785307-d9b4-420f-b0a6-55c77a5d22f5/application)

Massachusetts Bay Transportation Authority, Massachusetts
     Applied on 03/11/2019 10:16 PM Eastern

     History

**Application Received**

## Director of Transit Facilities Maintenance (/careers/mbta/applications/submitted/2330769/5e31d4f5-3b7c-4863-873a-0f4d71ab1ffd/application)

Massachusetts Bay Transportation Authority, Massachusetts
     Applied on 01/23/2019 09:37 PM Eastern

     History

**Application Received**

## Director of Green Line Transformation (/careers/mbta/applications/submitted/2278603/a6b84b2a-cb1b-452e-abbc-7677ed35f293/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 01/23/2019 08:23 PM Eastern

History

**Application Received**

## Project Manager - Commuter Rail, Transit & Facilities (/careers/mbta/applications/submitted/2287832/ceed7f36-3aea-423a-907b-3b25a4b79d8d/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 01/13/2019 08:53 PM Eastern

History

**Application Received**

## Director of Commuter Rail Capital Progams (previous candidates do not need to re-apply) (/careers/mbta/applications/submitted/2286870/07e7993a-b72e-41e2-be2d-cf4207ecd5f7/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 01/13/2019 06:30 PM Eastern

History

**Application Received**

## Superintendent of Cleaning & Maintenance Systems (Previous Applicants Need not Apply) (/careers/mbta/applications/submitted/2203533/8b745a06-b1ed-4b93-b97d-89bd96babe85/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 11/10/2018 11:45 PM Eastern

History

**Application Received**

← Prev (/careers/mbta/applications/submitted?page=3)     1 (/careers/mbta/applications/submitted?page=1)

2 (/careers/mbta/applications/submitted?page=2)     3 (/careers/mbta/applications/submitted?page=3)

Next →

Showing items 31 - 38

# Exhibit #3



*Performance Recognition*

Dear Mustapha J,

Congratulations, it gives us great pleasure to inform you that you have been selected as a recipient of a **2021 Commonwealth of Massachusetts Citation for Outstanding Performance**.

Now in its 37th year, the Commonwealth Performance Recognition Program recognizes state employees for their extraordinary contributions to public service. Emphasis is placed on attainment of high priority agency objective(s); exceptional managerial, organizational and/or communications achievements; exemplary leadership; and achievement of significant improvements in productivity and/or cost savings in agency operations.

An individual employee may be nominated by a supervisor, peer, professional colleague, or someone else who is familiar with the person's work. A group of employees may also be nominated for its performance as a unit.

Citation winners will be recognized in a companywide email highlighting each winning nomination as well as on TSTOP.

Once again, congratulations.

MBTA Human Resources Department



**Massachusetts Bay Transportation Authority**

# *Performance Recognition 2021*

In recognition for your contribution to the goals of the

## MBTA

The Commonwealth of Massachusetts presents the

## 2021 CITATION for OUTSTANDING PERFORMANCE

to

## Mustapha J Jahour



_____
Lieutenant Governor

_____
Governor



# *Performance Recognition 2016*



*In recognition of your contribution*
*to the goals of*
**MassDOT Rail and Transit Division**

*The Commonwealth of Massachusetts presents the*

# **Citation for Outstanding Performance**

*to*

**Jay Mustapha**

**Agency Head**

**Governor**

January 27, 2021

To whom it may concern:

I am writing to recommend Jay Mustapha as a student in your program.  He has been a member of our team for over a year; we worked together for the previous year as well. Jay fits well into our team.

As his manager in the MBTA IT department, I can assure you that Jay is a hard and diligent worker.  He is able to keep tabs on all aspects of our project and accomplish the complex as well as the simple tasks in his queue.  I can depend on him to get things done.

Additionally, Jay is always striving to learn as much as possible to help him in his job and for his future.  Therefore I am not surprised and I am fully behind his quest to take accredited classes towards an MBA.

Sincerely,

*Anne M. Lurie*

Anne Lurie

alurie@mbta.com

## Re: EAM Test Environment upgrade to V 19.0.4-102

✗ DELETE   ← REPLY   ← REPLY ALL   → FORWARD   ⋯

Mark as unread



### Metraux, David
Wed 2/26/2020 7:47 PM

To: Mustapha, Jay;

⁝ Purple Category

You replied on 2/26/2020 7:49 PM.

Thank you for completing this upgrade, much appreciated!

David

**From:** Mustapha, Jay
**Sent:** Wednesday, February 26, 2020 7:35 PM
**To:** Metraux, David
**Subject:** FW: EAM Test Environment upgrade to V 19.0.4-102

Good evening David.

FYI, MBTA's EAM Test Environment software upgrade to the latest version V 19.0.4-102 was completed successfully.
This upgrade is critical to EAM mobile focus application which we are working on implementing in all Engineering & Maintenance departments .

Regards
Jay

**From:** Mustapha, Jay
**Sent:** Wednesday, February 26, 2020 7:30 PM
**To:** Boyce, William <WBoyce@MBTA.com>; Patel, Satyen <spatel@MBTA.com>; McEleney, Cornelius <CMcEleney@MBTA.com>; Lurie, Anne <ALurie@MBTA.com>; Chann, Megan <mchann@MBTA.com>; Grey, Joseph <jgrey2@MBTA.com>; 'Hugh Quinn' <hugh.quinn@trapezegroup.com>; 'Wayne Dolezal' <wayne.dolezal@trapezegroup.com>; 'Brendan Bligh' <brendan.bligh@trapezegroup.com>; Cunningham, Siobhan <SCunningham@MBTA.com>; 'Scott Wilson' <scott.wilson@trapezegroup.com>; 'Joel Black' <joel.black@trapezegroup.com>; Stroman, Avery <astroman@MBTA.com>; Pietrella, Justin <jpietrella@MBTA.com>; Fallon, Jonathan <JFallon@MBTA.com>; Recore, Peter <PRecore@MBTA.com>; Fridman, Alexandra <afridman@MBTA.com>; Collard, Diane <dcollard@MBTA.com>; Scott, Tyler <tscott@MBTA.com>; Croteau, Russell <RXCroteau@MBTA.com>; Wilson, Matthew <MWilson@MBTA.com>
**Subject:** RE: EAM Test Environment upgrade to V 19.0.4-102



July 14, 2021

To Whom It May Concern:

It is my pleasure to offer my recommendation for Jahour Jay Mustapha, with whom I shared a professional relationship for more than 20 years while I was employed as Chief Engineer for the Commuter Rail.

Jay is extremely hardworking, knowledgeable and resourceful. With his broad skill set and his willingness to apply and transfer his skills, Jay has worked in many roles and capacities. I first met Jay when he was working for an outside vendor providing IT support for the MBTA. Eventually Jay joined the MBTA in a similar internal role.

Ultimately, Jay joined my department where his skills proved invaluable. Our department went through a major systems upgrade, including new hardware and software. Although Jay was working as a Station Inspector, he became the go-to person for myself and staff members in terms of training on the new software.

As a consultant for AI Engineers, I still have the opportunity to communicate and seek counsel from Jay regarding computer issues and asset management. He is a strong communicator, manages his priorities well and is able to work as part of team as well as autonomously. Jay Mustapha will be an asset to your organization.

Sincerely,

*Edmund Tavernier*

Edmund Tavernier
Manager, Railroad Engineering Services

September 19, 2018

Re: Jay Mustapha

On Tuesday, September 18, 2019, I was working an overtime shift at the Maintenance Control Center. During the course of the shift, we were utilizing both, Blue Zone and Trapeze, simultaneously. Some staff were available to assist in the event I ran into any problems with the program, including Jay Mustapha.

My shift was 1:00pm to 9:00pm and Jay was coming in and out of MCC to ensure we did not encounter any problems on Trapeze during the entire duration of my shift. Personally, I would either walk to his office or send him an email anytime I had a question or stumbled upon an issue with the program and has always been available to assist.

Jay has been a great help to me and I know once we go "live" there should be minimal complications with navigating through the program.

Respectfully Submitted,

Henry Perez, #70976

ANY QUESTIONS I CAN BE REACHED AT HPEREZ@MBTA.COM

51 Lakewood Road

Newton, MA 02461

August 30, 2018

Letter of Recommendation for Mr. Jahour Mustapha (Jay)

I have worked closely with Jay Mustapha over the last three years on the implementation of Trapeze Software as a representative of the Power Department at the Massachusetts Bay Transportation Authority.

Jay has successfully been able to work with the Trapeze team to translate our needs in the Power Department into a workable user interface for managing our work orders and identifying all of our assets that need to be tracked for maintenance and capitol replacement.

Jay has worked with me to identify the location of thousands of electric distribution manholes in our system using a team of student interns and Google maps for determining the coordinates for each of these manholes.  In addition, Jay was very helpful in establishing the hierarchy of assets within the Power Department and developing a consistent naming convention that is compatible with the Trapeze software.

We have worked together to develop a list symptoms and repair tasks for work activities within the Power Department.  He was responsible for training our staff on the Trapeze system and providing feedback for suggested improvements.

It has been a pleasure working with Jay over the years.  He is a motivated and conscientious worker with great attention to detail.

Jay would make an excellent team member in the software implementation business environment.

Sincerely,

John P. Seferiadis, PE





Charles D. Baker, Governor
Karyn E. Polito, Lieutenant Governor
Stephanie Pollack, massDOT Secretary & CEO
Brian Shortsleeve, Chief Administrator and Acting General Manager

8/12/16

To whom it may concern:

I am extremely pleased to write this letter of recommendation for Jay Mustapha.

Jay and I have worked collaboratively at the MBTA for 1 1/2 years and I have found him a conscientious and hardworking professional. During the years I have worked with Jay, I have noticed him to be consistently pleasant, tackling all assignments with dedication and a smile.

Jay is an individual who believes in positive motivation not only within his work ethic, but his personal life as well.
I would describe Jay as a dedicated and enthusiastic individual who is an accomplished multitasker that ensures the efficiency of each project he is involved in.

He has my highest recommendation, and I am happy to furnish more details if you would like more information.

Sincerely,

Susan Ciaccio

Susan Ciaccio



Charles D. Baker, Governor
Karyn E. Polito, Lieutenant Governor
Stephanie Pollack, MassDOT Secretary & CEO
Frank DePaola, General Manager
Brian Shortsleeve, Chief Administrator

June 14, 2016

MBA Program

Admissions Department

To whom it may concern,

I would like to recommend Mr. Jahour (Jay) Mustapha into your MBA Program. I have known Jay professionally for the past 3 years.

Jay has been working at the Massachusetts Bay Transportation Authority (MBTA) in excess of 10 years with increasing responsibility throughout the organization. He is a talented and devoted employee seeking to expand his management training in the form of a formal MBA with your educational establishment.

I believe Mr. Mustapha has the commitment and drive to successfully attain this qualification and is ready for the next step in his personal development.

Feel free to contact my at any point should you have questions about this recommendation.

Kind Regards,

Satyen Patel, MBA, CEng, MEng, MIET

Director of Asset Management

857-366-2038



Charles D. Baker, Governor
Karyn E. Polito, Lieutenant Governor
Stephanie Pollack, MassDOT Secretary & CEO
Frank DePaola, General Manager
Brian Shortsleeve, Chief Administrator



To: Whom it May Concern

From: Walter A. Reed, Jr.

Senior Director

Assets, Capital Planning and Training

Engineering and Maintenance

Date: June 13, 2016

Subject: **Letter of Recommendation**

Mustapha (Jay) Jahour

---

I am pleased to write this letter of recommendation for Jay Mustapha and I highly recommend that Jay be considered for the position for which he has applied.

I have known Jay for over the past ten years and as a manager here at the MBTA and have been witness to both his professional growth and exemplary work ethic.

I have also had the opportunity to work directly with Jay in his role as EAMS Information Manager where he has and continues to play a pivotal role in the upstart and implementation of this new chapter of establishing configuration management, physical asset cataloging, baseline assessments, policy, goals/objectives, schedules and resource requirements for the program. Jay has also made professional contributions to the Authority as a Safety Inspector and as a Supervisor of Systems Services and Maintenance for the Railroad Operations Directorate.

In closing, Jay is not only well equipped but has shown the propensity to apply his experience and to grow from challenges that he is presented with. His attention to detail, patience, teaching ability and strong computer skills have prepared him to make viable contributions in his role within a team orientated environment.



Deval L. Patrick, Governor
Richard A. Davey, MassDOT Secretary & CEO
Beverly A. Scott, Ph.D., General Manager
and Rail & Transit Administrator



November 12, 2014

Commonwealth Management Certificate Program Application Committee
Human Resources Division
One Ashburton Place, Room 301
Boston, MA 02108

To whom it may concern:

I would like to take this opportunity to offer a recommendation for Jahour Mustapha to attend the Commonwealth Management Certificate Program. Jahour joined the Massachusetts Bay Transportation Authority (MBTA) in 2000 as a Network Administrator in the Information Technology Department. After numerous years in the IT Department he moved on to become a Safety Leader in the MBTA's Safety Department. Jahour joined the MBTA's Railroad Operations Directorate in April of 2014 as a Supervisor for System Services Maintenance.

Jahour is dedicated to the tasks he undertakes and demonstrates a strong work ethic. He would be an excellent candidate for your program and I believe his management abilities will be enhanced after participating in the Commonwealth Management Certificate Program.

I recommend Jahour Mustapha as a candidate for your 2014-2015 Commonwealth Management Certificate Program.

Sincerely,

Mohamed Sekkat
Director of Engineering and Maintenance

March 24, 2014

RE: Recommendation for Jahour (Jay) Mustapha

To Whom It May Concern:

I have known Jay for the past six years as a colleague and the last year as his supervisor. Jay's passion for his work is evident through his commitment to 'seeing a project through to the end'. I have worked on numerous projects with Jay. Some of these projects were small. However, they had a significant impact on safety of MBTA passengers. Other projects were large and required several levels of technical review.

Large or small, Jay approached them with the same commitment to resolve and mitigate the situation. Jay's ability to gather the information from outside sources and collaborate with other departments is an asset. Jay's enthusiasm for his work will serve him well in any future endeavors.

On a personal note Jay is a family man. Although his family is separated by miles you will note that his family is his #1 priority as it should be. His character is genuine and you will always know where he stands. From a supervisor's point of view, you want your staff to be honest and upfront. Jay has always been that way with me.

If additional information is needed, feel free to contact me on my personal cell phone at 617-549-8546.

Sincerely,

Timothy P. Davis

February 6, 2013

RE: Jahour Mustapha

TO WHOM IT MAY CONCERN:

I met Mr. (Jay), Jahour Mustapha in 1999 as a Computer Consultant with the MBTA. While working closely with Mr. Mustapha, he demonstrated and performed his computer skills throughout the MBTA. He is reliable in monitoring comprehensive plans in a timely manner. He is courteous and professional to the Authority's customer service quality standard, whether it is with a customer, vendor or co-worker to rules and regulations.

Mr. Mustapha was hired October 2006 as a Safety Inspector in addition to Network Administrator duties that includes a new database Industry Safe programming for the Safety Department. As a co-worker, Jay is a very skilled hard working co-worker. When designing a new database or other duties, I would consider him to be very confident. Jay's first performance in the Safety Department, internal and external is safety.

If you need to contact me, please do not hesitate to call me at (1-508-674-6459.

Nancy Gooding-Cordeiro



Boston    Chicago    Long Beach

Gerard J. Ruggiero WSO-CSS
63 Milford Drive
Pembroke, MA 02359

August 23, 2010
To Whom It May Concern,

It is with great pleasure to write this letter of reference for Mr. Jahour Mustapha from Boston, Massachusetts. Mr. Mustapha and I both worked for the Massachusetts Bay Transportation authority for over 10 years and came to know each other while Jay worked in the Information Technology Department where he was the computer repair representative. At that time both Mr. Mustapha and I worked together where I found him to be very knowledgeable and considerate to all he came in contact with.

In October of 2006, Mr. Mustapha came to work for me at the MBTA Safety Department. At that time I was the Deputy Director and Jay worked as an Inspector for all construction activities at the Authority, he also served as a liaison sharing dialog between various agencies and contractors working on the many projects that interfaced with the MBTA.  However, this was not his only level of responsibility. Mr. Mustapha also investigated accidents (both construction & transit), and oversaw our training efforts, and computers repairs/modifications.  He was responsible for assessing contractor safety compliance to MBTA, FTA, FRA, DEP, BPD, BFD, City of Boston Building Dept, and OSHA rules & regulations. He also oversaw work done by utility companies such as National Grid & MWRA.

As stated, it has been my pleasure to know and have worked with Jay during our time at the MBTA He is a stand-up person that possesses excellent interpersonal skills, I highly recommend him for any position in which he would strive at.  He will make an excellent candidate for the Master's program at Massachusetts Maritime.

If you have any questions or require additional information, I can be reached at (781) 789-7419.

Gerard J. Ruggiero

# Kudos

## Davey, Richard

**Sent:** Tuesday, April 12, 2011 9:01 PM

**To:** Mustapha, Jay

**Cc:** Clarke, Randy

Jay:

Just wanted to drop you a note and say keep up the excellent work. I am hearing very good things about your diligence out in the field. Your work is improving the safety of our workplace for our people. This is significant, keep it up.

Rich



# Massachusetts Bay Transportation Authority

*Mitt Romney*
*Governor*

*Kerry Healey*
*Lt. Governor*

*John Cogliano*
*Secretary and MBTA Chairman*

*Daniel A. Grabauskas*
*General Manager*

September 6, 2005

To Whom It May Concern:

I have worked with Jay Mustapha for over 5 years.   While Jay is professional, competent, a hard worker, has great technical skills and is a very quick study what has most impressed me is that Jay is a true gentleman.   Jay is personable and very courteous making him one of the favorite technicians for our end-users.  He is dedicated to his job and takes it very seriously.   He will always go above and beyond to get the job done.

Should you have any further questions, please feel free to give me a call.

Sincerely,

*Janice LeBlanc*

Janice LeBlanc
Supervisor, ITD HelpDesk
45 High Street, 4th Floor
Boston, MA  02110
(617) 222-1630



# Massachusetts Bay Transportation Authority

*Mitt Romney*
*Governor*

*Kerry Healey*
*Lt. Governor*

*John Cogliano*
*Secretary and MBTA Chairman*

*Daniel A. Grabauskas*
*General Manager*

December 16, 2005

To Whom It May Concern,

Over the past several years I have come to know Jay Mustapha as a dedicated, responsible and hardworking fellow employee. His knowledge, expertise and quality of work are exceptional. As the Supervisor of the Data Center I have called on him to resolve pc problems in the room. He has always responded in an expeditious and professional manner. Often, he took the time despite his very busy schedule to explain the problem and resolution to my staff. He would explain possible preventative measures as well.

In addition, Jay is a coworker who works well in a diverse environment and with other employees on every level. He has truly been an asset to my department. I know that he will be a welcome addition to any future work place. If I can be of any further assistance please feel free to give me a call.

Sincerely,

Maria D'Aveni
Supervisor of Data Center Operations
45 High St.
Boston MA. 02110
617-222-4766



# Massachusetts Bay Transportation Authority

*Mitt Romney*
*Governor*

*Kerry Healey*
*Lt. Governor*

*John Cogliano*
*Secretary and MBTA Chairman*

*Daniel A. Grabauskas*
*General Manager*

To: Hiring Manager

From: Tom McNulty, Deputy Director Revenue Collection

Date: December 21, 2005

Re: Jay Mustapha Recommendation

Dear Sir or Ms.

I have been working with Jay on a regular basis for approximately two years since the beginning of my employment at the MBTA. During this period, the Revenue Collection facility has gone through significant changes, including reconstruction and major systems reconfiguration. Jay has been an important contributor to that effort, especially in assisting with countless systems conversions and upgrades. Computers have been moved multiple times during construction and Jay was responsible for executing the move and insuring that all components and systems were working properly. These duties often entailed weekend and evening work, which went above and beyond what was required. Jay possesses considerable technical expertise along with an exemplary work ethic; I strongly recommend him for the Revenue Technician foreperson.



# Massachusetts Bay Transportation Authority

*Mitt Romney*
*Governor*

*Kerry Healey*
*Lt. Governor*

*John Cogliano*
*Secretary and MBTA Chairman*

*Daniel A. Grabauskas*
*General Manager*

December 20, 2005

To Whom It May Concern:

RE:    Recommendation of Jay Mustapha

I understand that Mr. Jay Mustapha has applied to become a full-time employee of the MBTA Information Technology Department, changing his association from his current contract status.

Whenever called upon to assist my staff or me, Jay has been valuable in solving our Information Technology questions and troubles, whether it is repairing or upgrading hardware or fixing or upgrading software. He has always acted in an extremely professional manner and he always accommodates our needs in a timely fashion, while minimizing any interference that his presence may have on our daily routines.

I believe that Jay Mustapha would be a valuable asset to the Authority as an employee of the Information Technology Department. In fact, I had always assumed that he was an employee given the excellent relationship he appears to have with other Information Technology Department staff. As such, I would highly recommend Jay for an Information Technology Department staff position.

Sincerely,

Alan H. Castaline
Director, Operations Passenger Services
and Schedules



# *Massachusetts Bay Transportation Authority*

*Mitt Romney*
*Governor*

*Kerry Healey*
*Lt. Governor*

*Daniel A. Grabauskas*
*Secretary and MBTA Chairman*

*Michael H. Mulhern*
*General Manager*

## MEMORANDUM

**To:**      To Whom it may Concern

**From:**    Nancy M. Shea
             Deputy Director of Safety

**Date:**    February 19, 2003

**Subject:**  **Commendation for Mr. Jay Mustatha Jahour**

This letter is to commend Mr. Jay Mustatha Jahour for his outstanding work performance. Jay is a bright and hardworking individual who works hard to ensure that the Authorities computers are functioning at peak performance. Jay has worked at the Authority as a contracted employee for many years and I am well aware of his dedication to his job and to the Authority.

I am greatly impressed by the skill and technical knowledge Jay consistently displays while performing his duties. Jay always responds promptly to whatever crisis exists and his efforts are always successful when addressing computer problems. Jay is a credit to the ITD Department and his commitment to the Authority is greatly appreciated by my staff and myself.

Please accept my sincere thanks for everything you've done and continue to do.

*Massachusetts Bay Transportation Authority, Ten Park Plaza, Boston, MA 02116-3974*

Steven C. Gilchrist
Supervisor of Finance
MBTA-Commuter Rail Department
45 High St.
Boston, Ma. 02110


January 30, 2002


Ms. Jane Marra
Manager of Human Resources
Transportation Building
10 Park Plaza
Boston, Ma. 02116


Dear Ms. Marra:


        I would like to bring to your attention the excellent work performed by Mr. Jay Mustapha in the area of computer problem resolution. On several occasions I have called the help desk at 45 High St. to resolve a computer problem. Mr. Mustapha, a three(3) year contract employee was sent to my office to handle the problem. Mr. Mustapha used the highest degree of professional expertise to fix the problem. I would hope that the MBTA Human Resource Department might consider securing the services of Mr. Mustapha on a permanent basis. He knows computer equipment and software; he knows locations and how to get around the MBTA. I think he would make a valuable addition to the MBTA team.


Sincerely,

*Steven Gilchrist*

Steven C. Gilchrist
Supervisor of Finance Commuter Rail Department

January 17, 2002

To Whom It May Concern:

I would like to commend Jay Mustapha for his time and hard work here at the Authority. Anytime there seems to be a problem with the computers, Jay is right there more than willing to figure out and resolve the problem.  There has been a number of occasions where he has helped out here on the 10th floor at Subway Operations and  has stayed well over his eight (8) hour work day to correct whatever  computer problem has occurred.

I recommend him highly as an experienced and motivated professional to the Authority.

Sincerely,

Kathleen Kineavy

# interoffice memo

Date:   08/14/02

To:       Thomas A. Kelley
             Director, System Application

From:    John Clarke  *John Clark*
             Superintendent of Building & Structure Maintenance

---

Anne Doyle, Administrative Coordinator, has brought to my attention that on numerous occasions Jay Mustapha has been of invaluable assistance to her when she needed help with computers. He is always most cooperative, efficient and knowledgeable.

We appreciate his assistance and believe this information would be of interest to you.

1

## Exhibit# 4

Mustapha "Jay" Jahour **work timesheet – date:** 3/ 24/2019

This timesheet shows in **2019** time record indicating some **365** hours of work in excess of Jay's regular **40 hours** per work week



Exhibit# 5




massDOT
Massachusetts Department of Transportation
**Rail & Transit Division**

## MBTA SUSPECTED MOLD INSPECTION REPORT

| Notification Date: 01/04/2018 | Date of Inspection: 01/26/2018 |
|---|---|

Location of Inspection: Charlestown, Building 3, Basement

Reason for Inspection: Received a safety hotline call of suspected mold in Charlestown, Building 3, Basement.

| Based on a visual inspection, MBTA Safety's determination is that the location: | Has Mold:   X | Does Not Have Mold: |
|---|---|---|

**HAZARD TYPE:**

Mold is microscopic organisms found everywhere in the environment, indoors and outdoors. The presence of mold is a potential health risk when exposed. Most molds are harmless but certain strains can cause infections, allergy-like symptoms, and produce toxins. The health effects to mold exposure include but are not limited to runny nose, eye irritation, cough/congestion, sneezing, skin rash, and aggravation of asthma. Individuals with weakened immune systems, allergies, asthma, sinusitis, and other chronic respiratory illnesses are at increased risk for experiencing health caused by exposure.

**OBSERVATION/FINDINGS:**

Currently, the suspected mold spores are located throughout the entire basement including the walls and ceiling of the basement and located on the first floor of Building 2, thus presenting a systematic risk to all employees.

**IMMEDIATE MITIGATION:**

Access to the basement shall be restricted. Safety recommends immediate mitigations be taken to protect employees who must enter the room basement. This shall include, the use of Mylar or plastic sheeting over mold-contaminated surfaces and vents which shall be sealed with an appropriate adhesive and proper the use of personal protective equipment when entering the basement. Due to evidence of mold in the vents on the first floor, the HVAC should be shut down to eliminate the risk of spreading mold spores throughout the building.

**PERMANENT MITIGATION:**

All contaminated areas and damp/wet materials that appear to have been continuously exposed to moisture need to be removed and properly disposed of. Personnel performing mold remediation need to be wearing proper respiratory protection (at a minimum half-face or full-face N, R, or P-95 respirator), hand/eye protection and clothing to prevent contamination to the skin. OSHA recommends removing excess moisture and identifying and permanently discontinuing the source of the moisture to eliminate the potential of future contaminations. Also, personnel must clean wet items/surfaces including all communication equipment thoroughly with detergent and water. Any HVAC equipment located in the basement must be thoroughly cleaned to eliminate the risk of spreading mold contamination throughout the building. All ventilation throughout the building must be inspected for mold and properly cleaned and disinfected. The basement will need to be well ventilated and fans can be used in the drying process. Due to the scope of the mold contamination, MBTA Safety recommends a structural engineer perform an inspection of all structural components in the basement to ensure structural integrity.

**WORK ORDER:**

| Work Order Number: 096 | Date of Work Order: 02/02/2018 |
|---|---|




Pictures:



Building 2, Hallway



Building 2, Hallway



Door leading downstairs



Wall on stairwell






Basement



Basement ceiling



Storage in basement



Storage in basement






Communications in basement



Communications in basement



Basement



Basement

# Exhibit# 6

ENVIRONMENTAL HEALTH OFFICE
BOSTON PUBLIC HEALTH COMMISSION
1010 MASSACHUSETTS AVENUE, 2ND FLOOR
BOSTON, MASSACHUSETTS 02118

617-534-5965

## THIS PERMIT MUST BE POSTED IN A CONSPICUOUS PLACE

**Permit Number:** **ASN-2019-00166**    **DEP Number:** **100308259**

Reviewed by:    Jordanna Ryan        On:    05/30/2019

**Contractor Information**    Lic. Number    Name

Asbestos Contractor    AC000686    RELIABLE ROOFING AND SHEET METAL LLC
Foreman/Supervisor    AS901676    ALGELIS CAMPUSANO
Project Monitor    AM051114    EDWIN G. MORGAN JR.
Analytical Laboratory    AA000208    ASBESTOS NOTIFICATION LABORATORY

**Worksite Information**
Facility Name:    21 ARLINGTON AVE
Facility Address:    21  Arlington AV Boston, MA 02129
Location of Work:
Owner Name:    LAHEY ROBERTA A
Owner Address:    238 WALDEN ST CAMBRIDGE, MA 02140
Asbestos Removal:    LF:    18000    SF:    18    Total:    18018
Permit Fee Paid:    $100.00

**Start Date:**    **5/31/2019**        **Permit Expires:**    **7/1/2019**

## ASBESTOS ABATEMENT PROJECT PERMIT

COMPLAINTS REGARDING PERMIT ACTIVITIES MAY BE REFERRED TO THE ENVIRONMENTAL
HEALTH OFFICE, BOSTON PUBLIC HEALTH COMMISSION

Exhibit# 7

Name: Mustapha Jahour | DOB: 8/18/1965 | MRN: 3581874 | PCP: Jin M Choi, MD

# Letter Details

 untitled image

Mass General West Allergy
40 Second Ave.
Bldg. 52, 2nd Fl., Ste. 2600
Waltham MA 02451
Dept Phone #: 781-487-3838
Dept Fax #:  781-487-3899

February 25, 2019

Mustapha Jahour

| | |
|---|---|
| Patient: | **Mustapha Jahour** |
| MR Number: | **3581874** |
| Date of Birth: | **8/18/1965** |
| Date of Visit: | **2/25/2019** |

To whom it may concern:

Mr. Jahour has been a patient in our clinic for several years. He suffers from severe allergies and asthma, triggered by mold, dust, and airborne irritants. It is medically necessary to limit his exposure to these triggers. Please ensure that his work area is free of mold, dust, and water leaks. His work area must be well-ventilated and carpet-free.

Sincerely,

Ellen J Dutta, MD

*This letter was initially viewed by Mustapha Jahour at 5/13/2019 4:25 PM.*

MyChart® licensed from Epic Systems Corporation © 1999 - 2019

Fax ALL 4 pages of this form to WorkPartners at 412-454-8238 or toll-free 1-844-531-4854    431908

Certification of Health Care Provider for
Employee's Serious Health Condition
(Family and Medical Leave Act)

U.S. Department of Labor
Wage and Hour Division

**WHD**
U.S. Wage and Hour Division

DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT

## SECTION I: For Completion by the EMPLOYER

OMB Control Number: 1235-0003
Expires: 8/31/2021

**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact: _____ the MBTA

Employee's job title: Mgr EAMS Information _____ Regular work schedule: _____ N/A

Employee's essential job functions: Contact Human Resources if Provider requires your job description

Check if job description is attached: _____

## SECTION II: For Completion by the EMPLOYEE

**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your name: _____ MUSTAPHA JAHOUR

First                        Middle                        Last

## SECTION III: For Completion by the HEALTH CARE PROVIDER

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address: _____ JIN M. CHOI MD   50 Stanford St.
Boston, MA 02114

Type of practice / Medical specialty: Medicine _____ NPI# 1477593119

Telephone: (617) 724 6610 _____ Fax: (617) 724-0802

Form WH-380-E Revised May 2015

431908

## PART A. MEDICAL FACTS

1. Approximate date condition commenced: _____ Since 2016

   Probable duration of condition: _____ 3+ years

   **Mark below as applicable:**
   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
   X No ____ Yes. If so, dates of admission:

   _____

   Date(s) you treated the patient for condition:
   9/4/2019    regular follow up  Since Nov 2016

   Will the patient need to have treatment visits at least twice per year due to the condition? ____ No  X Yes.

   Was medication, other than over-the-counter medication, prescribed? ____No X Yes.

   Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
   ____No  X Yes. If so, state the nature of such treatments and expected duration of treatment:
   Gastroenterology  Pulmonology, Allergy  and  Psychiatry

2. Is the medical condition pregnancy? X No ____ Yes. If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

   Is the employee unable to perform any of his/her job functions due to the condition: X No ____ Yes.

   If so, identify the job functions the employee is unable to perform:

   _____

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):
   Anxiety  Work-related stress  insomnia
   Reflux disease, diarrhea, asthma, cough, SOB
   Chest tightness, TMJ syndrome.

   _____
   _____
   _____
   _____

431908

PART B: AMOUNT OF LEAVE NEEDED

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ___No  _X_Yes.

   If so, estimate the beginning and ending dates for the period of incapacity: _episodic flure up_

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? _X_No ___Yes.

   If so, are the treatments or the reduced number of hours of work medically necessary? ___No ___Yes.

   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

   _____

   Estimate the part-time or reduced work schedule the employee needs, if any:

   _____ hour(s) per day; _____ days per week from _____ through _____

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ___No _X_Yes.

   Is it medically necessary for the employee to be absent from work during the flare-ups? _____ No _X_Yes. If so, explain:

   _Chronic anxiety and work place stress associated_
   _with hostile work environment, and asbestos and_
   _environmental allegen exposure_

   Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

   Frequency: _1_ times per _____ week(s) _____ month(s)

   Duration: _____ hours or _30_ day(s) per episode

ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER:

_Requesting a reasonable accommodation of_
_time off due to exacerbation of his condition by_
_Supervisory personnel_

431908

_____

Signature of Health Care Provider          Date    9/18/20/7

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.**

Form WH-380-E Revised May 2015

 MASSACHUSETTS
GENERAL HOSPITAL

MGH Allergy Associates
55 FRUIT ST.
COX 201A
BOSTON MA 02114
Dept Phone #: 617-726-3850
Dept Fax #:  617-724-0239

September 24, 2019

Mustapha Jahour
1000 Fulton St
Apt 3j
Boston MA 02109

Patient:      **Mustapha Jahour**
MR Number: **3581874**
Date of Birth: **8/18/1965**
Date of Visit: **9/24/2019**

To whom it may concern:

Mr. Jahour has been a patient in our clinic for several years. He suffers from severe allergies and asthma, triggered by mold, dust, and airborne irritants including construction. It is medically necessary to limit his exposure to these triggers. Please ensure that his work area is free of mold, dust, water leaks, asbestos and active construction. His work area must also be well-ventilated and carpet-free.

He is currently suffering from a severe episode of  respiratory symptoms and is on treatment. He will require absence from work until he recovers.

Sincerely,

Ellen J Dutta, MD

 **BRIGHAM AND WOMEN'S HOSPITAL**

 **HARVARD MEDICAL SCHOOL TEACHING HOSPITAL**

October 21, 2019

RE: Mustapha Jahour

To whom it may concern, please be advised that I evaluated Mustapha Jahour today in the Centers for Chest Disease at the Brigham and Women's Hospital. As part of this evaluation, I reviewed his medical records including his recent evaluations at Mass General Hospital by allergy.

In my view, based on the allergy testing and the results of the diagnostic testing, most notably, the pulmonary function studies, Mustafa has experienced reactions to exposure to mold in the course of his work for the MBTA. It is my understanding that he works at least 12 to 14 hours/day in a building that has recognized to have water damage with mold and possibly asbestos.

It is noteworthy that he feels much better when he is out of the work environment.

I strongly recommend that he be transferred to another building where there is no mold present in accordance with the Americans with Disabilities Act. It is my understanding that he is able to do all the customary job duties expected of him. As a result, this recommendation for him to be transferred appears to me to be consistent with the principles of the ADA.

Sincerely yours,

Robert J. McCunney, MD

Name: Mustapha Jahour | DOB: 8/18/1965 | MRN: 3581874 | PCP: Jin M Choi, MD

# Progress Notes

Robert Joseph McCunney, MD at 2/11/2020  3:00 PM
February 11, 2020

To whom it may concern,

I am one of Mr.Yahour's treating physicians.  He has asthma that is aggravated by less than adequate indoor air quality, most notably in environments where there is may be water damage or mold present.  Previously I had requested that he be afforded reasonable sedations accordance with the Americans with disabilities act.  Most specifically, I had recommended that he be placed into a work environment in an enclosed office, with no carpeting and ideally presence of vinyl or linoleum floors.  In addition, a window that can be opened and shot is ideal, however, if that is not possible an air purifier can be a reasonable substitute. He has demonstrated allergies to dust mites mold another environmental agents.  Result, it is necessary for him to be off that can interfere with his ability to work as effectively as he would otherwise.

I thank you in advance for considering requests conducted in the hope of preventing asthma-like reactions including cough

Sincerely yours,

Robert J. McCunney, MD, MPH

MyChart® licensed from Epic Systems Corporation © 1999 - 2019

Name: Mustapha Jahour | DOB: 8/18/1965 | MRN: 3581874 | PCP: Jin M Choi, MD

# Letter Details

 untitled image

MGH Allergy Associates
55 FRUIT ST.
COX 201A
BOSTON MA 02114
Dept Phone #: 617-726-3850
Dept Fax #:  617-724-0239

January 28, 2020

Patient:     **Mustapha Jahour**
MR Number: **3581874**
Date of Birth: **8/18/1965**
Date of Visit: **1/28/2020**

To whom it may concern:

Mr. Jahour has been a patient in our clinic for several years. He suffers from severe allergies and asthma, triggered by mold, dust, and airborne irritants including construction materials. It is medically necessary to limit his exposure to these triggers. Please ensure that his work area is free of mold, dust, water leaks, and asbestos and active construction. His work area must also be well-ventilated and free of all carpeting. An enclosed office space without carpeting would be superior to an open space where carpeting is present.

He is currently suffering from a respiratory symptoms related to these exposure.

Thank you for your attention to this matter.

Sincerely,

Paul Hesterberg MD

Paul E Hesterberg, MD

Name: Mustapha Jahour | DOB: 8/18/1965 | MRN: 3581874 | PCP: Jin M Choi, MD

# Letter Details

 MASSACHUSETTS
GENERAL HOSPITAL

MGH Bulfinch Medical Group
50 STANIFORD ST
9TH FL
BOSTON MA 02114
Dept Phone #: 617-724-6610
Dept Fax #:  617-724-0802

January 29, 2023

Re:
Mustapha Jahour
100 Fulton Street, Apt. 3j
Boston MA 02109

To Whom It May Concern:

Mr. Mustapha Jahour is a patient of mine at the Bulfinch Medical Group of MGH.
I have known him over several years.  He developed new onset asthma and allergic
rhinitis several years ago.  He has allergies to the mold.  He has been exposed to
mold  and asbestos at work. He is very concerned and anxious about possible long
term health effects of mold and asbestos exposure at work.

He has been suffering with various symptoms, such as persistent asthma, cough,
wheezing, shortness of breath, non specific abdominal symptoms with
diarrhea/constipation and depression/anxiety which he attributes to his mold and
asbestos exposure at work.
He has been evaluated and followed by various specialist ((gastroenterologist,
pulmonologist, allergist, orthopedist, and psychiatrist) for the above mentioned
symptoms .

I would like to urge you to help arrange his transfer to the safer work environment,free
of mold and asbestos as soon as possible or to accommodate the remote work from
home until he can be reassigned to a safer work environment.

Name: Mustapha Jahour | DOB: 8/18/1965 | MRN: 3581874 | PCP: Jin M Choi, MD

# Letter Details

 MGH PULMONARY VIRTUAL DEPARTMENT
55 FRUIT ST
BOSTON MA 02114
Dept Phone #: 617-726-2000

February 20, 2023

Mustapha Jahour

Patient:      **Mustapha Jahour**
MR Number: **3581874**
Date of Birth: **8/18/1965**
Date of Visit: **2/20/2023**

To Whom it May Concern:

I am writing this letter with an update of my opinion regarding your case.

It is my medical opinion, to within a reasonable degree of medical certainty, that Mr. Jahour has a work-related condition has resulted from workplace exposures over a period of years to mold.

Sincerely,

David Christopher Christiani, MD

*This letter was initially viewed by Mustapha Jahour at 2/20/2023 10:14 PM.*

Exhibit# 8

**SUBMITTED**     **INCOMPLETE**        38 Submitted Applications found

POSITION

    APPLICATION STATUS

      ACTIONS

### Safety Lead Investigator – Track (/careers/mbta/applications/submitted/3441867/474f2297-e8bb-4178-8dc0-b1dd2fcb1615/application)

Massachusetts Bay Transportation Authority, Massachusetts
    Applied on 03/11/2022 11:36 PM Eastern
    History
  **Application Received**

### Deputy Director of Everett Main Repair (/careers/mbta/applications/submitted/3445274/1bcccf5b-bf94-490a-9503-38cf5abfb333/application)

Massachusetts Bay Transportation Authority, Massachusetts
    Applied on 03/11/2022 11:32 PM Eastern
    History
  **Application Received**

### Asset Information Manager -Power (/careers/mbta/applications/submitted/3417283/4ae979e1-be18-4ce4-ba93-ecbb2c6454be/application)

Massachusetts Bay Transportation Authority, Massachusetts
    Applied on 03/01/2022 10:50 PM Eastern
    History
  **Application Received**

### Asset Information Manager - Signals and Comms (/careers/mbta/applications/submitted/3416274/f261823e-8da3-428c-a200-cb761368edf7/application)

Massachusetts Bay Transportation Authority, Massachusetts
    Applied on 03/01/2022 10:19 PM Eastern
    History

Application Received

### Senior Director, Red Line Transformation (/careers/mbta/applications/submitted/3412509/90c24d05-a4e7-45a9-b588-56153f66a80d/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 02/17/2022 08:33 PM Eastern

History

**Application Received**

### Supervisor of Electrical Maintenance (/careers/mbta/applications/submitted/3369165/5eba58a0-a535-4c04-b280-aa27660e5648/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 02/02/2022 07:07 PM Eastern

History

**Application Received**

### Director Commuter Rail Safety (/careers/mbta/applications/submitted/3060419/2e8b8b13-c7d8-465b-af31-bf6af50ffa2d/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 05/28/2021 12:26 AM Eastern

History

**Application Received**

### Director of Engineering (Previous applicants need not re-apply) (/careers/mbta/applications/submitted/2950353/4a48954d-f27a-4fcd-90dc-631b01d6dba6/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 05/12/2021 12:24 AM Eastern

History

**Application Received**

### Senior Project Manager - Green Line Transformation (/careers/mbta/applications/submitted/3061641/1354d555-522e-4650-8369-54b47b7f10d8/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 05/11/2021 11:41 PM Eastern

History

**Application Received**

## Director of Engineering (Previous applicants need not re-apply) (/careers/mbta/applications/submitted/2950353/28d33cef-bd82-4bdf-b463-4f42c07bca8d/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 01/21/2021 11:25 PM Eastern

History

**Application Received**

← Prev (/careers/mbta/applications/submitted?page=1)    1 (/careers/mbta/applications/submitted?page=1)

3 (/careers/mbta/applications/submitted?page=3)    4 (/careers/mbta/applications/submitted?page=4)

Next → (/careers/mbta/applications/submitted?page=3)

Showing items 11 - 20

SUBMITTED        INCOMPLETE                                    38 Submitted Applications found

POSITION

    APPLICATION STATUS

       ACTIONS

## Asset Information Manager – Facilities (/careers/mbta/applications/submitted/3779234/79e21aa3-5ad8-4cd6-b9ae-586d8fe161e5/application)

Massachusetts Bay Transportation Authority, Massachusetts
       Applied on 01/26/2023 05:44 PM Eastern
      History
   **Application Received**

## Asset Information Manager - Track (/careers/mbta/applications/submitted/3777995/ccfad559-f457-4d93-b154-60a68720b608/application)

Massachusetts Bay Transportation Authority, Massachusetts
       Applied on 11/18/2022 09:20 PM Eastern
      History
   **Application Received**

## Asset Information Manager – Systems (/careers/mbta/applications/submitted/3779414/d95dbbaf-9682-446a-93ec-b6b159419a48/application)

Massachusetts Bay Transportation Authority, Massachusetts
       Applied on 11/18/2022 09:04 PM Eastern
      History
   **Application Received**

## Asset Information Manager – Facilities (/careers/mbta/applications/submitted/3779234/87f2dc28-5754-4498-ab2f-58775901e624/application)

Massachusetts Bay Transportation Authority, Massachusetts
       Applied on 11/18/2022 08:47 PM Eastern
      History

Application Received

## Assistant General Manager for Rail Transportation (/careers/mbta/applications/submitted/3794478/0e0cd576-0a18-4944-92b6-1558a0ba9369/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 11/18/2022 11:26 AM Eastern

History

**Application Received**

## Director of SMS and Safety Oversight (/careers/mbta/applications/submitted/3555438/849ac972-30cd-4512-9801-8def15fb5714/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 06/10/2022 09:02 PM Eastern

History

**Application Received**

## Asset Information Manager - Signals and Comms (/careers/mbta/applications/submitted/3416274/25109151-f998-45bc-bb30-f2786250cdfd/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 06/10/2022 08:46 PM Eastern

History

**Application Received**

## Director of Logistics and Analytics (/careers/mbta/applications/submitted/3466934/00a1fcf3-d762-46e4-9c67-666706484705/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 03/30/2022 11:35 PM Eastern

History

**Application Received**

## Supervisor of Electrical Maintenance (/careers/mbta/applications/submitted/3369165/03465ed7-2a82-431b-b49f-7c04d0fd222a/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 03/15/2022 11:29 PM Eastern

History

**Application Received**

## Senior Director, Red Line Transformation
## (/careers/mbta/applications/submitted/3412509/70ded6aa-7c25-416e-a7f0-23e30bdef1cd/application)

Massachusetts Bay Transportation Authority, Massachusetts

Applied on 03/11/2022 11:45 PM Eastern

History

**Application Received**

← Prev          2 (/careers/mbta/applications/submitted?page=2)

3 (/careers/mbta/applications/submitted?page=3)       4 (/careers/mbta/applications/submitted?page=4)

Next → (/careers/mbta/applications/submitted?page=2)

Showing items 1 - 10

**SUBMITTED**    **INCOMPLETE**                    38 Submitted Applications found

**POSITION**

      **APPLICATION STATUS**

          **ACTIONS**

### Director of Positive Train Control (/careers/mbta/applications/submitted/2950426/82caf665-e556-440c-a21e-98016fc7a24c/application)

Massachusetts Bay Transportation Authority, Massachusetts

      Applied on 01/21/2021 11:00 PM Eastern

      History

    **Application Received**

### Director of Asset Management (/careers/mbta/applications/submitted/2820835/ab92cda7-d402-4ba2-8891-1de28a38105e/application)

Massachusetts Bay Transportation Authority, Massachusetts

      Applied on 08/13/2020 11:54 PM Eastern

      History

    **Application Received**

### Senior Asset Information Manager (/careers/mbta/applications/submitted/2738404/c12f46a9-ad87-454a-bcb6-4260c1491cd7/application)

Massachusetts Bay Transportation Authority, Massachusetts

      Applied on 08/13/2020 10:50 PM Eastern

      History

    **Application Received**

### Deputy Director of Safety Certification (/careers/mbta/applications/submitted/2650976/bda9909b-bbbe-495e-a049-321c67c63501/application)

Massachusetts Bay Transportation Authority, Massachusetts

      Applied on 01/13/2020 11:40 PM Eastern

      History