**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| MUSTAPHA JAHOUR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Civil Action No. 23-CV-10993-AK |
| v. ) | |
| ) | |
| MASSACHUSETTS BAY ) | |
| TRANSPORTATION ) | |
| AUTHORITY & SATYEN PATEL ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER**
**ON DEFENDANTS' MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

This case involves a Black MBTA employee with a disability that claims his employer exposed him to hazardous environmental work conditions and engaged in discrimination and retaliation.

The Plaintiff, Mustapha Jahour ("Jahour"), brings this action against his employer, the Massachusetts Bay Transportation Authority ("MBTA"), and former MBTA supervisor, Satyen Patel ("Patel"). [Dkt. 1-2 at ¶¶ 1-2]. Following multiple incidents of alleged discrimination perpetuated by the MBTA, Jahour filed charges with the Massachusetts Commission Against Discrimination ("MCAD") on October 17, 2018 and October 25, 2019. [Id. at ¶ 7]. On December 28, 2022, Jahour obtained a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") and subsequently brought an action in state court. [Dkt. 15-2 at 3-5]. That action was removed to the District Court of Massachusetts on May 5, 2023. [Dkt. 1]. He now seeks to amend his original complaint, referred to hereafter as "Amended

1

Complaint" to include additional facts to supplement his claims.  [Dkt. 15, 23].  In his proposed Amended Complaint, Jahour brings the same four counts against the MBTA as his original complaint: Count I for violation of the Americans with Disabilities Act ("ADA") and/or M.G.L. c. 151B ("Chapter 151B") by failing to provide him with reasonable accommodations [Dkt. 15-1 at ¶¶ 52-55]; Count II for retaliation [id. at ¶¶ 56-58]; Count III for race and national origin discrimination [id. at ¶¶ 59-60]; and Count IV for intentional infliction of mental distress.  [Id. at ¶¶ 61-65].  The MBTA moved to dismiss all counts of the original complaint and opposed Jahour's Motion to Amend for failure to state a claim for untimeliness, a lack of jurisdiction, and preemption by the Workers' Compensation Act, M.G.L. c. 152.  [Dkts. 11, 18].

The MBTA's Motion to Dismiss [Dkt. 11] is **GRANTED** as Jahour's claims are time-barred, he has failed to exhaust his administrative remedies for the new retaliation allegations, and Count IV is barred by the exclusivity provision of the Massachusetts Workers' Compensation Act (the "Act").  Jahour's Motion to Amend the Complaint [Dkt. 15] is **DENIED,** as the amendments fail to remedy any of the aforementioned fatal issues.  Additionally, all claims against Defendant Patel are **DISMISSED** sua sponte for the reasons argued by the MBTA.

## I.   BACKGROUND

Unless otherwise noted, the facts are presented as alleged in the Amended Complaint. [See Dkt. 15-1 ("Am. Compl.")].  Jahour is a Black, Muslim immigrant from Morocco and remains the only employee with this background.[1]  Jahour began his employment with the

---

[1] The Amended Complaint provides conflicting facts as to whether Jahour remains employed.  Paragraph 1 states that he remains an employee, however, Paragraph 23 states that Jahour was driven to "such despair as to give up and quit his career…altogether."  [Id. at ¶¶ 1 & 23].  Since the Amended Complaint does not provide a termination date and the motion papers refer to Jahour as a current employee, the Court will infer that he remains an MBTA employee to date.

MBTA in 1999 and became a full-time employee in the "I.T." Department in 2006. [Dkt. 15-1 at ¶ 1]. While under the immediate supervision of Satyen Patel, Director of Asset Management, Jahour has suffered medical complications, at least in part, due to, and exacerbated by the "hazardous" working conditions and the stress of retaliatory actions once Jahour raised concerns of the environmental hazards in the workplace. [See Dkt. 1 at ¶¶ 9, 10, 14, 21, 58]. He further claims that the psychological stress of discrimination based on disability, religion and race has further impacted his health. [See Dkt. 1 at ¶¶ 9, 10, 12, 14, 15, 21, 58, 64].

### A. ADA Discrimination

A physician diagnosed Jahour with "severe allergies" and he suffers from "mold and exposure ailments" caused by "toxins" in his work environment. [Dkt. 1 at ¶¶ 9, 10]. He was placed on Family Medical Leave of Absence (FMLA) as recommended by his physician from February 19, 2019, to March 10, 2019, due to "irreversible illnesses" caused by the mold and asbestos that contaminated his work environment. [Dkt. 15-1 at ¶¶ 5, 12]. On February 25, 2019, Jahour's physician requested a reasonable accommodation pursuant to the ADA concerning Jahour's "severe allergies." [Id. at ¶ 13]. The MBTA failed to accommodate Jahour's request for a reasonable accommodation. [Id.]. Shortly after Jahour returned from FMLA leave, on March 19, 2019, another physician requested a reasonable accommodation on his behalf, but the MBTA failed to accomodate this request. [Id. at ¶ 24]. On October 21, 2019, a physician that specialized in mold-exposure requested a reasonable accommodation that required the MBTA move Jahour's workplace to a location that was free of mold. [Id. at ¶ 42]. Yet again, the MBTA failed to accommodate this request. [Id.]. On November 29, 2019, [id. at ¶ 43] and again on January 28, 2020 [id. at ¶ 47], different doctors made new requests for accommodations. During this timeframe, Jahour met with the ADA Department for the MBTA

to discuss his physician's reasonable accommodation requests made on his behalf on December

2019 [id. at ¶ 45] and again on February 7, 2020,  [id. at ¶ 48], to no avail.

### B.  Adverse Employment Action

Two days after Jahour returned to work following his FMLA leave, he submitted formal

complaints to the MBTA's Office of Diversity and Civil Rights ("ODCR").  [Id. at ¶ 15].  In

response, his supervisor, Patel, retaliated against Jahour by compelling him to sign a "Discipline"

form.  [Id.].  A "Discipline" form in an employee's record bars his eligibility for a promotion for

two years.  [Id.].  That same day, March 12, 2019, Jahour was "interrogated" for disobeying a

direct order from Patel, which Jahour maintains were fabricated accusations.  [Id. at ¶ 16].  On

March 13, 2019, Jahour filed another complaint with the ODCR stating that the discipline issued

against him was a retaliatory response to the claim he filed with the Massachusetts Commission

Against Discrimination ("MCAD") in October of 2018.  [Id. at ¶¶ 7, 17].  The next day,

however, the MBTA served Jahour a formal "Discipline" document.  [Id. at ¶ 18].

The MBTA retaliated against Jahour throughout other aspects of his job.  He was given

higher workloads, working an excess of 50 hours per week.  [Id. at ¶ 10].  He made numerous

requests[2] for an assistant to help with his workload—as provided to other similarly situated

employees—which the MBTA consistently denied.  [Id.].  In April 2019, Patel denied Jahour

funding and permission to attend an annual conference that was considered vital to his job.  [Id.

at ¶ 27].  At a later conference that Jahour attended in 2023, he was the only MBTA employee

that was required to pay most of the expenses out of his own pocket.  [Id. at ¶ 29].  In terms of

his continued efforts for promotion, Jahour applied to more than twenty jobs within the MBTA,

---

[2] The Amended Complaint does not indicate when these requests were made.

but was only granted two interviews [id. at ¶ 8], despite meeting the minimum employment requirements for those positions.  [Id. at ¶ 21].

### C.  Racial Discrimination

Jahour asserts that he was "systematically and repeatedly" denied career advancement opportunities on the basis of his race and national origin.[3]  [Id. at ¶ 8].  When higher positions became available, despite Jahour's qualifications, he was bypassed for a "non-Black, non-Muslim" employee and at times the MBTA outright refused to consider Jahour's application. [Id.].  There was even an occasion where MBTA "employees involved in making these decisions" referred to Jahour as a "terrorist".[4]  [Id.].  Jahour also points to the MBTA's disparate handling of asbestos removal, which he maintains was racially motivated: Patel ordered the removal of carpet and tiles from Gerry Bennett's office (a colleague that is "not of African descent, not Moroccan…[or] Muslim") that was adjacent to Jahour's office following Bennett's complaint.  [Id. at ¶ 14].  The unremedied contaminants in his workplace, in addition to hostile treatment by his supervisors, have contributed to his declining health.  [Id. at 32].  Some examples of these health conditions include chronic congestive and respiratory disorders in addition to acute anxiety.  [Id. at ¶ 32].

### D.  Jahour Reported MBTA's Conduct

In addition to the several letters from physicians addressed to the MBTA calling attention to Jahour's work environment and health issues, Jahour made a number of complaints internally within the MBTA and to outside agencies to report and address the treatment he suffered.  [See id. at ¶¶13, 24, 37, 39, 42, 43,47, 49].  On March 12 and 13, 2019, Jahour filed the complaint

---

[3] The Amended Complaint also references Jahour's religion as a Muslim in support of the MBTA's discriminatory motive, however, does not formally bring a religious discrimination claim.  [See Dkt. 15-1 at ¶¶ 4, 31].
[4] The Amended Complaint does not provide a date when this occurred.

with the MBTA's Office of Diversity and Civil Rights ("ODCR").  [Id. at ¶¶ 15, 17].  On March 29, 2019, Jahour filed a grievance with his union and on April 10, 2019 the union filed a formal grievance on Jahour's behalf.  [Id. at ¶ 25].  That grievance was ultimately denied.  [Id.].  He again filed a subsequent complaint with the ODCR due to the hostile work environment and continuing health issues caused by the mold and asbestos exposure on September 19, 2010.  [Id. at ¶¶ 37-38].  Jahour also sought accountability from outside agencies and contacted the Massachusetts State Health Department ("Health Department") [id. at ¶ 33] and filed complaints with Massachusetts Commission Against Discrimination ("MCAD") twice: once on October 17, 2018 and October 25, 2019.  [Id. at ¶ 7].  The Health Department conducted an inspection due to Jahour's efforts, however, despite his repeated requests, the MBTA withheld the report for "several years," likely until September of 2022.[5]  [Id. at ¶¶ 6, 33].  Jahour subsequently filed a charge with the EEOC and his claims were dismissed and he obtained a right to sue letter on December 28, 2022.  [Dkt. 15-2 at 3-5].  He then filed his initial complaint in a Massachusetts state court on March 24, 2023.  [Dkt. 1].

## II.   LEGAL STANDARD

Courts may simultaneously decide a motion to dismiss and a motion to amend.  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the court must conduct a two-

---

[5] Paragraph 6 of the Amended Complaint discusses that Jahour was not able to obtain "'hard proof' of the [workplace] conditions" until September 21, 2022, because the MBTA "concealed and made inaccessible" test results indicating the environmental conditions.  [Dkt. 15-1 at ¶ 6].  While paragraph 6 does not explicitly say he's referring to the Health Department's investigation report in the same paragraph, it appears that the inspection results discussed in paragraph 33 is likely at least one of the pieces of hard proof discussed in paragraph 6.  [Id. at ¶¶ 6, 33].

step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements.  Id.  Factual allegations must be accepted as true, while legal conclusions are not entitled to credit.  Id.  A court may not disregard properly pleaded, factual allegations even if actual proof of those facts is improbable.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to "allege a plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

A party seeking to amend a complaint more than twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f) must seek leave of the court to do so. Fed. R. Civ. P. 15(a).  When deciding a motion for leave to amend, the court's task is to determine whether "justice so requires" that leave be granted, such that the court must "examine the totality of the circumstances" and "exercise its informed discretion in construing the balance of pertinent considerations."  Palmer v. Champion Mortg., 465 F.3d 24, 30-31 (1st Cir. 2006). Leave to amend may be denied in "appropriate circumstances," such as "undue delay, bad faith, futility, and the absence of due diligence on the movant's part."  Id.  Amendment is "deemed futile when the proposed amended complaint would fail to withstand a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6).  Crowl v. M. Chin Realty Tr., 607 F. Supp. 2d 245, 246 (D. Mass. 2009) (citing Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 19 (1st Cir. 2001)).

## III.    DISCUSSION

Taking the allegations as true at the pleading stage, the MBTA dodged what otherwise would have been serious and disturbing claims (backed by evidence) due to a "technicality" in a manner of speaking.  Perhaps if Jahour was able to retain counsel sooner, he would not have delayed filing a complaint with a state or federal court while waiting for "hard evidence" of his working conditions.  This delay proved fatal in his pursuit to hold the MBTA accountable for reprehensible claims, and no doctrine or equitable relief to extend the statute of limitations is appropriate to revive them.

The Court considered that the EEOC did not dismiss Jahour's recent complaint for untimeliness, and instead issued a right to sue letter.  In doing so, the Court contemplated its role in evaluating the EEOC's decision and whether it should base its own decision concerning timeliness on the EEOC's administrative outcome.  After all, there were at least one or more allegations of misconduct that occurred after Jahour previously filed with the MCAD on October 25, 2019.  The Court in Poirier v. Mass. Dep't of Corr., examined this very question, and unequivocally declared that the court is empowered to arrive at its own finding, separate from the EEOC as to timeliness:

> In my initial order, I relied on the fact that neither the MCAD nor the EEOC dismissed Plaintiff's claims for untimeliness, and that Plaintiff brought her suit in this Court within ninety days of receiving a right-to-sue letter from the EEOC. I am, however, empowered to make an independent finding on timeliness, and I am not bound by the agencies' findings in this regard.

186 F. Supp. 3d 66, 68 (D. Mass. 2016), aff'd, No. 16-1587, 2018 WL 11337451 (1st Cir. Feb. 22, 2018) (citing see Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1017 (1st Cir. 1979) ("the courts have generally made an independent review of the timeliness of the agency filing."). Accordingly, this Court finds it appropriate to rule that Jahour's charge with the EEOC was not timely, defeating his ADA, discrimination, and retaliation claims before this Court.

Jahour's recent retaliation claims added to the amended complaint are barred because he failed to exhaust his administrative remedies prior to adding those claims.  Lastly, Jahour's intentional infliction of mental distress claim is preempted by the exclusivity provision of the Workers' Compensation Act.

### A.  Failure to Accommodate

To file a lawsuit for disability or "handicap" discrimination under Title I of the ADA or Chapter 151B, a plaintiff must first exhaust their administrative remedies by filing an administrative charge with the EEOC or the MCAD.  See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999); see also Cuddyer v. Stop & Shop Supermarket Co., 750 N.E.2d 928, 936 n. 11 (Mass. 2001) ("A claim cannot be brought alleging discrimination under G.L. c. 151B, unless it is preceded by the filing of a complaint of unlawful discrimination with the MCAD within six months of the alleged act or acts of discrimination.").  Pursuant to a "work-sharing" agreement between the EEOC and the MCAD, "a charge filed with the EEOC is automatically referred to the MCAD and claims filed with MCAD or the EEOC are effectively filed with both agencies."  Williams v. City of Brockton, 59 F.Supp.3d 228, 245 (D. Mass. 2014) (citing see Leung v. Citizens Bank, No. 12-11060-FDS, 2014 WL 1343271 (D. Mass. Apr. 2, 2014).  A timely administrative complaint under the ADA and Chapter 151B must be filed "within 300 days after the alleged unlawful employment practice occurred."  Mekonnen v. OTG Mgt., LLC, 394 F. Supp. 3d 134, 149 (D. Mass. 2019), aff'd, No. 19-1846, 2021 WL 1110915 (1st Cir. Mar. 23, 2021) (internal quotations marks and citations omitted).  The determining factor as to the timeliness of a reasonable accommodation claim under ADA depends on whether the employee's request for accommodation was denied during the statutory period.  Id.

Once a claim is timely filed with the EEOC, the statute of limitations stops accruing while the agency processes the claim as to federal claims.  Maldonado-Gonzalez v. P.R. Police, 927 F. Supp. 2d 1, 12 (D.P.R. 2013) ("[The] administrative filing suspended the limitations period because the EEOC had jurisdiction to offer Plaintiff the relief requested").  Claims pursuant to Chapter 151B, however, must be filed within three years, regardless of whether the administrative agency has completed processing the claims.  M.G.L.  c. 151B, § 9; see Goldstein v. Brigham and Women's Falkner Hosp., Inc., 80 F.Supp. 3d 317, 324 (D. Mass. 2015).  In Goldstein, the plaintiff filed a complaint with the MCAD and EEOC on November 24, 2009.  Id. at 321.  The EEOC adopted the findings of the MCAD, dismissed Goldstein's complaint, and issued a right-to-sue letter on July 23, 2012.  Id. at 322.  On October 22, 2012, Goldstein filed a lawsuit alleging violations of both Title VII, 42 U.S.C. §§ 2000e et seq., and M.G.L.  c. 151B. Id. at 323.  The court held that the plaintiff failed to state her claim within the three-year limitations period imposed by Chapter 151B § 9, because she was terminated in March 2009, however, filed her lawsuit on October 2012—five months after the lapse of the statute of limitations—regardless of whether the MCAD would have completed its administrative processes before the expiration.  Id. at 324.

Jahour's 2019 claims are untimely with respect to both the 300-day deadline and the three-year statute of limitation.  As to the 300-day statute of limitations, Jahour filed his charge with the EEOC, his claims were dismissed, and he obtained a right to sue letter on December 28, 2022.  To satisfy the 300-day deadline, he would be precluded from using any allegations to form the basis of his ADA claim prior to March 3, 2022.  Jahour's most recent EEOC filing includes allegations of denied accommodation requests as far back as 2019 and the most recent taking place February 7, 2020.  [Dkt. 15-1 at ¶ 48].  This unquestionably falls outside the

10

window of timely allegations.  While Jahour received documentation confirming the hazardous

working environment and its effect on his health much closer to the 300-day deadline of his

recent EEOC charge, this alone cannot form the basis of an ADA claim as it is not an adverse

employment action in and of itself.  See Mekonnen, 394 F. Supp. 3d at 146-147 (there must be

an adverse employment action against the person with the disability).  Whatever the reason may

be, the EEOC declined to dismiss Jahour's charge for failing to meet the 300-day deadline.

Notwithstanding the EEOC's actions, once Jahour filed his complaint in state court, albeit within

the 90 days of the EEOC Notice of Rights to Sue letter,[6] his claims still exceeded the 3-year

statute of limitations under Chapter 151B.  As for his federal claims the 300-day limitation

period remain the barrier.

Jahour argues that the continuing violations doctrine can rescue his time-barred claims.

The Court disagrees.  Federal law allows for "[a] party alleging employment discrimination may,

in appropriate circumstances, file suit based on events that fall outside the applicable statutes of

limitation."  Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009).  Under this

doctrine, recovery is still possible "so long as a related act fell within the limitations period."  Id.

Courts have consistently held however that this doctrine does not apply to "discrete acts of

alleged discrimination that occur on a particular day," but rather a type of "repeated conduct"

where "a single act [] may not be actionable on its own."  Id.  The denial of a person with a

disability's request for an accommodation is an example of a discrete act not covered by the

continuing violations doctrine.  Id. at 130-131.

---

[6] The EEOC issued a Dismissal and Notice of Rights letter on December 28, 2022, notifying Jahour that he had 90 days to sue upon receipt of the Notice.  He filed his claim in state court on March 24, 2023.  [Dkt. 15-2 at 3-5].

Massachusetts' motivation or purpose behind the continuing violation rule—at least in part—is to account for a series of improper conduct that evolves over the course of time that may not reveal itself as discriminatory conduct from the outset but, becomes apparent thereafter when considering incidents as a whole.  See Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 808 N.E.2d 257, 265-66 (Mass. 2004) (internal quotation marks and citation omitted) ("This exception for violations of a continuing nature recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact.").  For the exception to apply under Massachusetts law, there must be "(1) at least one discriminatory act [that] occurred" within the 300-day limitations period; (2) the alleged discriminatory act must have "a substantial relationship to the alleged untimely discriminatory acts;" and, (3) the earlier violations were such that they "did not trigger [the plaintiff's] awareness and duty to assert his rights."  Id. at 266-67;  M.G.L. c. 151B, § 5 (implementing a 300-day limitation period).  Denying a request for a reasonable accommodation constitutes a discrete act and thus, does not require repeated conduct to establish an actionable claim.

Jahour's circumstances do not fit the spirit and intent of the continuing violations exception, especially here where the employer repeatedly rejects accommodation requests.  See Tobin, 553 F.3d at 131 (holding that the continuing violation doctrine does not rescue plaintiff's case even though he made repeated requests for accommodation because employer's initial rejection started the statutory clock).  The Amended Complaint charts a timeline of other discrete violations with respective missed opportunities to properly assert his rights in court.  Even if the application of the continuing violations exception was appropriate here, the first and third prongs of the continuing violations doctrine puts to rest any possibility of reviving Jahour's claims.  As

explained above, none of the discriminatory actions in the Amended Complaint occurred within the 300-day limitation period, at least where dates were actually indicated. Even so, the third prong fails, as Jahour cites at least five or more independent and discrete instances leading up to his EEOC filing that should have triggered—and indeed did trigger—his awareness of his rights, to the extent that he made various efforts to report the incidents to internal and external agencies.

Jahour entirely ignores the three requirements for the continuing violations doctrine to apply, and instead focuses on the literal meaning of the continuing doctrine: simply that the violations against him *continued*, thus the statute of limitations should be extended. [See e.g., Dkt. 19]. The case he relies upon, Ocean Spray Cranberries, Inc., discusses the "each day" theory within the context of the continuing doctrine, which proposes that each day that the employer failed to provide a reasonable accommodation "is an act of discrimination that recurs each day." 808 N.E.2d at 267. Under this theory, the court points out, "an employee could file a 'timely' complaint today alleging that the employer denied her an accommodation requested decades go … such an outcome would directly contravene the purpose of the limitations requirement." Id. at 267-68. Further, this "each day" theory would wholly remove the distinction between a continuing act of discrimination and a discrete act of discrimination. Id. at 268. For these reasons, the Supreme Judicial Court of Massachusetts in Ocean Spray Cranberries, Inc. rejected this theory. Id. at 267. Likewise, Jahour's semblance of the "each day" theory does not fare well before this Court. The Court dismisses Jahour's ADA claims.

### B.    Race and National-Origin Discrimination

Jahour brings claims for race and national origin discrimination (and at points in the Amended Complaint, suggests Jahour's religion is a cause of discrimination) pursuant to Chapter 151B. [Dkt. 15-1 at ¶¶ 4, 60]. His claims face the same unfortunate fate as his disability

discrimination claims for being untimely.[7]  Similar to his ADA claim, the continuing violations

doctrine cannot save his race or national origins discrimination claim.  Jahour argues that the

treatment he has endured is a result of "ongoing, continuous and systemically interrelated

pattern" of discrimination that created a "hostile work environment."  [Dkt. 19 at 2-3].  Jahour

has not brought a hostile work environment claim before this Court, however.  The cases he

relies upon in support of applying the doctrine make the distinction between discrete, obvious

instances of discrimination and the more evasive actions that may occur in a hostile work

environment claim.  Contrary to Jahour's general race discrimination claim, hostile work

environment claims are specifically referenced as one of the few victorious claims under the

continuing violation exception, if at least one claim occurs within the filing period.  See e.g.,

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002) (distinguishing hostile

environment claims from discrete acts and emphasizing the "cumulative effect of individual

acts" for cause to apply continuing violation); L'Etoile v. New England Finish Sys., Inc., No. 06-

CV-00390-JL, 2008 WL 4104143, at *4 (D.N.H. Aug. 29, 2008).  Jahour's contention that a

discriminatory structure within the MBTA has led to—at least in part—a continuing pattern of

disregard for his health or contributed to disparate treatment may have merit.  However, within

this alleged structure of continuing, systemic discrimination lies instances—obvious and

discrete—in which Jahour acted on and attempted to exercise his rights, whether internally or

externally, through various grievance filings.  The failure of those efforts to yield the relief

Jahour now seeks in an untimely manner does not warrant the relief provided by the continuing

violation doctrine.  See Nat'l R.R. Passenger Corp., 536 U.S. at 114, Frankly put, the continuing

doctrine exception is not meant for unlawful employment practices that can be narrowed to a

---

[7] No allegations based on race, religion, or nationality occur after 2019—when a date is specified at all.  All retaliation allegations occur in 2019, if specified at all.  See e.g., Dkt. 15-1 at ¶¶ 17, 27, 29, 30, 21.

discrete act that independently would be easy to identify as improper or discriminatory.
Accordingly, his discrimination claims are **DISMISSED**.

### C.     Retaliation

Jahour brings a retaliation claim for a laundry list of reasons—some of which fall within various state or federal statutes—however, leaves the Court to its own devices to hypothesize what causes of action apply.  [Dkt. 15-1 at ¶¶ 56-58].   Similar to the other allegations in the Amended Complaint, the majority of these allegations supporting the retaliation claim (those that actually indicate a date or timeframe) take place in 2019 and 2020, which are untimely for the reasons previously stated.  The Amended Complaint adds two recent claims that occurred after the EEOC processed Jahour's charge.  First, Jahour alleges that the MBTA recently denied him the opportunity to interview for jobs that he was qualified for, for filing an administrative charge. [Dkt. 15-1 at ¶ 21].  Second, he claims that he attended a conference in the year 2023 (no indication of month or days that he attended) where he was treated differently than the other MBTA attendees—he was forced to cover the costs for food and lodging, unlike his colleagues. [Dkt. 15-1 at ¶ 29].

The MBTA argues that the Court does not have jurisdiction to rule on the recent claims that were not brought before the EEOC.  The Court disagrees.  The administrative exhaustion requirement—specifically filing a timely charge with the EEOC—is not a "jurisdictional prerequisite" to filing a claim in federal court, but rather a requirement that is "subject to waiver, estoppel, and equitable tolling."  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); see Cintron-Garcia v. Supermercados Econo, Inc., 818 F. Supp. 2d 500, 507 (D.P.R. 2011) (the prerequisite to filing with the EEOC is an "exhaustion requirement" rather than a jurisdictional issue).

Plaintiffs may have the ability to amend a complaint pending in court without first bringing the amendments before the EEOC, if "the scope of the civil complaint" is limited "to the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Fantini v. Salem State Coll., 557 F.3d 22, 26–27 (1st Cir. 2009). However, the First Circuit has made clear that "an administrative charge is not a blueprint for the litigation to follow," and that the charge is merely an opportunity for the agency to investigate. Id. at 27 (citing Powers v. Grinnell Corp., 915 F.2d 34, 38 (1990)). The charge and the subsequent complaint filed in court needn't mirror each other, and "the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." Id. (internal quotation marks and citations omitted). In Fantini, the Court reversed the district court's decision that plaintiff failed to exhaust her administrative requirements. 557 F.3d at 26. The district court found that because the charge "barely articulated" a gender discrimination claim, and neither party addressed the claim during the agency's review, the exhaustion requirement was not fulfilled. Id. at 26. On appeal, the First Circuit determined that because the charge mentioned gender discrimination in the charge allegations, the defendants had proper notice, and the agency would have had the opportunity to investigate it, whether the claim was well-articulated or not. Id. at 27-8. Thus, any subsequent claim in the complaint for gender discrimination could be considered within the scope of the investigation. Id.

Jahour's two recent allegations of retaliation are not new, but rather repeat incidences of the same previous allegations: he continues to be passed up for positions he claims he is qualified for, and continues to receive disparate treatment in terms of professional development opportunities. These recent allegations appear to fit within the scope of the EEOC investigation, as Fantini described them, at least in the sense that defendants had proper notice of similar

16

alleged behavior.  After all, "[r]etaliation claims typically fall within the scope of investigation rule."  Everett v. 357 Corp., 904 N.E.2d 733, 748 (Mass. 2009); see Clockedile v. N.H. Dep't of Corr., 245 F.3d 1, 5–6 (1st Cir. 2001) (retaliation claims preserved so long as retaliation "reasonably related to and grows out of" discrimination complained of to the agency, e.g., "retaliation is for filing the agency complaint itself").  However, the ability to fufil the second part of Fantini is at issue: did the EEOC have an opportunity to investigate the recent allegations?

Jahour's new allegation occurred after the close of any EEOC or MCAD investigation. Courts are especially inclined to refuse jurisdiction of a new claim asserted outside of the administrative charge that occurred after the administrative agency concluded its investigation. See  Furtado v. Standard Parking Corp., 820 F. Supp. 2d 261, 275 (D. Mass. 2011) (finding no jurisdiction where the case before the MCAD focused exclusively on events in "mid-2008," making it "unreasonable" for the MCAD to uncover facts related to claims that occurred outside of that timeframe); see also Clockedile, 245 F.3d at 5 ("It is a stretch to describe acts that occurred after agency proceedings have ended … as "within" the scope of the agency investigation."); Windross v. Village Auto. Grp., Inc., 887 N.E.2d 303, 307 (Mass. App. Ct. 2008) (holding that the purposes of M.G.L. c. 151B "would be frustrated if the claimant were permitted to allege one thing in the MCAD complaint only to allege something entirely different in the ensuing civil action .…").  Accordingly, the recent claims for retaliation that occurred after the charge was filed with the EEOC is outside the scope of the investigation and dismissed without prejudice.  The dismissal of new claims should not be construed to mean recent claims of retaliation, or any other violations that have occurred since the EEOC filing, are barred from future litigation once the administrative remedies have been exhausted.

### D.      Intentional Infliction of Mental Distress

The MBTA argues that the Workers' Compensation Act, M.G.L. c. 152, precludes Jahour's claim for intentional infliction of mental distress.  [Dkt. 12 at 8] (citing Sayian v. Verizon New England Inc., No. 19-CV-11845-DJC, 2022 WL 375287, at *10 (D. Mass. Feb. 8, 2022).  According to Massachusetts law, "the act has been interpreted to encompass physical and mental injuries arising out of employment ...."  Foley v. Polaroid Corp., 413 N.E.2d 711, 715 (Mass. 1980).  An act arising out of employment "arises out of the nature, conditions, obligations or incidents of the employments ...."  Case of Hicks, 820 N.E.2d 826, 833 (Mass. App. Ct. 2005).

Jahour argues that the intentional infliction of emotional distress as a result of a civil rights violation, for example, is not the type of injury precluded by the Act.  He relies on Foley, which held that an employee's injured reputation was not the type of injury contemplated by the Worker's Compensation Act, especially where the Act could not "purport to give relief for the main wrong of injury to reputation." 413 N.E.2d at 715.  Importantly, the case held that the Act's protections extend only to the extent that the employee's injury arises out of nature, conditions, obligations or incidents of employment, and alleged violations involving the employee's civil rights for example is not personal injury arising out of and in course of employment, which would be compensable under the Act.  Id. at 716; see M.G.L.  c. 151B, §§ 4, 9.  However, as Choroszy v. Wentworth Inst. of Tech. emphasizes, Foley dismissed the emotional distress claim with respect to the rape charges and emotional distress attributed to co-workers due to the Act and distinguished between mental and physical injuries contemplated by the Act as opposed to "intangible rights" falling outside of the nature, conditions or incidents of employment.  915 F. Supp. 446, 452 (D. Mass. 1996).  Using these parameters, the Choroszy court determined that the injuries claimed before it are based on the plaintiff's termination and

harassment from his colleagues—the type of injuries contemplated by the Act—and finds the Act bars plaintiff's recovery.  Id. at 452-453.

The basis of Jahour's mental distress claim can be reduced to the physical and mental injuries he suffered due to the hazardous environment and the failure to remove such conditions (in part due to some type of animus).  This is precisely the type of injury for which the Act contemplates: injury that arises from the "nature, conditions, obligations or incidents of employment,"[8] for which a workers compensation claim could provide relief.  Accordingly, Jahour's distress claim is precluded by the Act.

## IV.    CONCLUSION

Accordingly, for the reasons stated above, the MBTA's Motion to Dismiss [Dkt. 11] is **GRANTED** and Jahour's Motion to Amend [Dkt. 15] is **DENIED**.  All claims against Defendant Patel are **DISMISSED** sua sponte.

**SO ORDERED.**

Dated: February 9, 2024                                    /s/ Angel Kelley
                                                          Hon. Angel Kelley
                                                          United States District Judge

---

[8] Case of Hicks, 820 N.E.2d at 833.